Juan Louis Dammert et al., as Ancillary Executors, etc., Respondents, *v.* William Henry Osborn et al., Appellants, et al., Respondents.

A testamentary disposition of property made by a citizen of another country, valid at the domicile of the testator, is valid here, and it may not be questioned when jurisdiction has been obtained by courts of this State over the property disposed of, or the parties claiming it, save when the disposition is contrary to public policy.

While, *it seems*, our courts may, in certain cases, decline to administer the gift and remit the property to the testator's domicile, they may not divest the title of one or transfer it to another contrary to the law of the domicile.

The provision of the Revised Statutes (1 R. S. 773, § 1), prohibiting the suspension by will of the power of alienation for a longer period than two lives in being at the death of the testator, does not, nor do the statutory provisions invalidating testamentary gifts to certain corporations, unless made a certain time before the testator's death, where he has a wife, children or parents, interdict bequests within the prohibition, made in another country to take effect here, and such bequests, if valid at the domicile of the testator, are valid here. Those statutory provisions apply to domestic wills which by their provisions are to be executed here.

S., residing and domiciled in Peru, died there leaving a will, which was duly proved and established in that country. His estate consisted mostly of personal property, a considerable portion of which, or the evidences thereof, were, at the time of his death, in this state. The will contained a charitable bequest of securities belonging to the estate for the purpose of establishing an institution for the education of poor female children in the city of New York, the board of managers of said institution to be selected by the surrogate of New York from a list named by the testator. The board was directed to postpone the purchase of land and construction of buildings for two years, in order that the school might be founded with the interest for that period without encroaching upon the principal. The will provided that a benevolent society named, incorporated in Peru, should receive from the executors all legacies of a public nature, and should deliver them to the various institutions made legatees, and if any such legatees declined to accept, that the legacy should pass to said society, which was also made residuary legatee. Trustees were appointed pursuant to the terms of the will, and upon their application an act was passed (Chap. 17, Laws of 1889) incorporating an institution for the carrying out of the purposes of the bequest, with power to accept and receive the gift. The trustees named accepted the trust and

organized under the act. Ancillary executors of the will were appointed here, who took possession of the personalty in this state. In an action for the construction of the will and for direction as to the disposition of the fund, it appeared that the bequest was valid by the law of Peru. *Held,* that the same was valid and enforcible here; that the act so passed was an expression of the legislative will that the gift should be received and administered in the manner and for the objects designated, as near as may be, and so every existing legal obstacle to the execution of the testator's purpose must be deemed to have been suspended or *pro tanto* repealed; that, as under the laws of the domicile the title or beneficial interest had not vested in heirs, next of kin or legatees, the legislature had the power to pass said act; and that, as, if the fund were remitted to Peru, the party receiving it would be bound to pay it over to said corporation, a judgment was proper requiring the ancillary executors to discharge the debts of the testator, if any, remaining in this state, and to pay the balance of the fund to the corporation.

Also, *held,* that the question as to what is the public policy of the state should be determined by the situation existing at the time the court is required to make a decree disposing of the fund, and so the act of 1893 (Chap. 101, Laws of 1893), "to regulate gifts for charitable purposes," might be considered as indicating an intention on the part of the legislature to enforce and uphold such gifts not theretofore recognized as valid.

Where a court of equity obtains jurisdiction and all the facts are before it, it may adapt the relief to the situation existing at the close of the litigation.

*Dammert* v. *Osborn* (65 Hun, 585), reversed.

·(Argued October 12, 1893 ; decided November 28, 1893.) ·

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 23, 1892, which affirmed a judgment in favor of the plaintiffs and the defendant, the Sociedad de Beneficiencia de Lima, entered upon a decision of the court on trial at Special Term.

This action was brought for the construction of the will of José Sevilla, deceased.

The portions of the will in question and the facts, so far as material, are stated in the opinion.

*William G. Choate* for appellant. The provisions of the will of Sevilla in favor of the Sevilla Home for Children are valid by the law of Peru, the testator's domicile. (*Kennedy*

v. *Porter*, 109 N. Y. 534; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 id. 263.) The title of the appellant, the Sevilla Home for Children, a corporation duly created by law for the purpose of receiving and administering the bequest, is a title which the Peruvian law would recognize. (*Bascom* v. *Albertson*, 34 N. Y. 584; *Jones* v. *Habersham*, 107 U. S. 174; *Russell* v. *Allen*, Id. 163; *Cross* v. *U. S. T. Co.*, 131 N. Y. 348.) The testator, at the time of his death, being domiciled in Peru, had power to make any disposition of his personal property which the law of Peru permitted. The accident that some part of his personal property was in this state did not affect his power by the law of Peru to dispose of the same in accordance with its laws, nor affect the validity of any such disposition, if valid by the law of Peru; and by the principles of international comity his will must be carried out in this state, in which the property happens to be, except so far as by the statutes or public policy of this state such action is forbidden. (*Cross* v. *U. S. T. Co.*, 131 N. Y. 330.) The act of the legislature incorporating the Sevilla Home for Children has removed the only obstacle which, under the laws of New York, could have prevented the carrying into effect of the will of Mr. Sevilla in accordance with the laws of Peru. (*Parsons* v. *Lyman*, 20 N. Y. 112.) The act of the legislature incorporating the Sevilla Home for Children is constitutional. (Laws of 1887, chap. 85; Laws of 1864, chap. 4; *Burrill* v. *Boardman*, 43 N. Y. 244; Laws of 1857, chap. 14; *Brewster* v. *City of Syracuse*, 19 N. Y. 116.) This is not a case in which it is the duty of the court to remit the funds to the foreign jurisdiction. (Code Civ. Pro. § 2701.) In any event the judgment should be reversed for error. It decrees that the bequest is void, and that this appellant is not entitled to receive the legacy. (*In re Hughes*, 95 N. Y. 55.)

*Frederic R. Coudert* for executors, respondents. The trust attempted to be created would, if created under the laws of this state, be deemed and adjudged void. (*Owens* v. *M. Society*, 14 N. Y. 380; *Levy* v. *Levy*, 33 id. 97; *Pritchard*

v. *Thompson*, 95 id. 76 ; *Read* v. *Williams*, 125 id. 560 ; *Marx* v. *McGlynn*, 88 id. 357 ; *Cruikshank* v. *Home for Friendless*, 113 id. 337 ; *In re Mayor, etc.*, 55 Hun, 204 ; *Bascom* v. *Albertson*, 34 N. Y. 588 ; *Tilden* v. *Green*, 130 id. 29 ; *Despard* v. *Churchill*, 53 id. 198 ; *Chamberlain* v. *Chamberlain*, 43 id. 424.) Whether the bequest was valid or invalid, the direction of the court to transmit the fund to the executors in Peru was right, and that disposition should be affirmed by this court. (*Parsons* v. *Lyman*, 20 N. Y. 112.)

*David Milliken, Jr.*, for Sociedad de Beneficiencia de Lima, respondent. There was at the death of the testator no one qualified to take. (*Read* v. *Williams*, 125 N. Y. 560 ; *Owens* v. *M. Society*, 14 id. 380 ; *Levy* v. *Levy*, 33 id. 97 ; *Pritchard* v. *Thompson*, 95 id. 76 ; *Bascom* v. *Albertson*, 34 id. 584.) The bequest is to an unincorporated charity, without any provision for its incorporation. A gift to an unincorporated charity is void. (*Sherwood* v. *A. B. Society*, 4 Abb. Ct. App. Dec. 227 ; 1 Keyes, 561 ; *Marx* v. *McGlynn*, 88 N. Y. 357 ; *Mapes* v. *A. H. M. Society*, 33 Hun, 363 ; *Shipman* v. *Rollins*, 98 N. Y. 324 ; *Phelps* v. *Pond*, 23 id. 69 ; *White* v. *Howard*, 46 id. 144 ; *Tilden* v. *Green*, 130 id. 29 ; *Cross* v. *U. S. T. Co.*, 131 id. 342 ; *Burrill* v. *Boardman*, 43 id. 254 ; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108 ; *Cruikshank* v. *Home for Friendless*, 113 N. Y. 337 ; *In re Mayor, etc.*, 55 Hun, 204 ; 119 N. Y. 660 ; *People* v. *Simonson*, 28 N. Y. S. R. 97.) The gift is ineffectual under the familiar rule that all limitations by a testator are void which suspend the absolute ownership of the personal property he bequeaths for a definite or indefinite period not bounded by lives in being. (*Bascom* v. *Albertson*, 34 N. Y. 584 ; *Yates* v. *Yates*, 9 Barb. 47, 325 ; *Boynton* v. *Hoyt*, 1 Den. 54 ; *Phelps* v. *Pond*, 23 N. Y. 69 ; *Cruikshank* v. *Home for Friendless*, 113 id. 337 ; *Smith* v. *Edwards*, 23 Hun, 223.) The law of the domicile of the legatee governs the validity of a charitable bequest. (*Cross* v. *U. S. T. Co.*, 131 N. Y. 330, 346 ; *Chamberlain* v. *Chamberlain*, 43 id. 424 ;

*Manice* v. *Manice*, Id. 387, 388; *Draper* v. *Harvard College*, 57 How. Pr. 269; *Mapes* v. *A. H. M. Society*, 33 Hun, 360; *Despard* v. *Churchill*, 53 N. Y. 198; Perry on Trusts, § 710.) The gift vested in others. (*Cruikshank* v. *Chase*, 113 N. Y. 337.) Payment should be made to the Sociedad de Beneficiencia. (Code Civ. Pro. § 2701; *Parsons* v. *Lyman*, 20 N. Y. 112; *Despard* v. *Churchill*, 53 id. 200.) The policy of the law is against upholding clauses in wills which impose restraint upon proper inquiry into testamentary capacity and the legality and validity of dispositions of property. More especially when it is made in good faith and is not vexatious. (2 Beav. 560; 2 Vern. 90; 1 Atk. 404; 3 P. Wms. 345; *Jackson* v. *Westerfield*, 61 How. Pr. 399.)

O'Brien, J. José Sevilla, residing and domiciled at Lima, in the republic of Peru, died there on the 9th of December, 1886, having made and published his last will and testament, bearing date July 2, 1885, by which he disposed of a large estate, consisting mostly of personal property, a considerable portion of which, or the evidences thereof, was at the time of his death actually within this state. The will was duly proved and established under the usual and proper judicial proceedings in the courts of the country where the testator was domiciled, having by law jurisdiction in such cases, and executors appointed pursuant to its provisions. These executors, residing in Peru, together with the appointed heirs and residuary legatees, caused the will or a copy thereof to be recorded in the office of the surrogate of New York, and thereupon, with their assent and upon their motion, the plaintiffs were appointed ancillary executors in this state, and having qualified and entered upon the duties of the trust, took into their possession the personal estate here. The single provision of the will out of which the questions arise which are involved in this appeal, is a charitable bequest for the education of poor female children in the city of New York.

The several clauses by means of which the testator sought to accomplish this purpose are quite elaborate and formal, and

their substance and effect will be sufficient to give a clear view of the general purpose, as well as the mode in which it was to be executed. The testator states in the will that in the previous year, 1884, he executed a will by which he left the larger part of his fortune to found an institution in New York under the name of "The Sevilla Home for Children," and in which he formulated the details of support and management, but in view of the unfortunate situation of his relatives and various persons dear to him, he deemed it necessary to reconcile this desire with his duties to his family. He then proceeds to declare that it is his will that there be established in the city of New York, and permanently maintained, an institution to be known as the "Sevilla Home for Children," to be managed by his executors and a board of philanthropic managers, and devoted to the education of poor female children.

He directed that in all matters relating to the institution a prudent economy be observed; that the buildings be adequate to the end to be attained, constructed to receive from fifty to one hundred children and the teachers required, the land to be purchased and buildings erected at moderate prices. The managers were empowered to make rules for the government of the institution in the best manner, not forgetting the following conditions: (1) Only very poor children, from five to ten years of age, fit for apprenticeship and free from ailments, were to be admitted, to remain in the home until they attained the age of sixteen. (2) The food and clothing to be economical and suitable, and the latter to be of uniform pattern and color for all. (3) The instruction to be primary and upon the basis of a moral education with directions as to the practical branches to be taught. (4) Day scholars to be admitted providing they did not occasion expense, to be kept apart from the boarders in order to preserve the moral tone. He then gives directions for investing any money earned by the children, whenever that was possible, one-half to be paid to them at sixteen, and the other half devoted to the support of the school. The number of children to be always subordinate to the resources, preference to be given to natives of Peru, upon

the recommendation of Peruvian consuls at New York or the place where application was made. The fitness of the children being proved, the managers could not, within the limit as to numbers, refuse them admission for any motive whatever. The board of philanthropic managers to be composed of seven prominent citizens of the city of New York, to be selected by the surrogate from a list which the testator named. For the purpose of founding and endowing the institution, five hundred thousand dollars was bequeathed in the securities, constituting his estate, at par, to be delivered to the board by the executors. The board was directed to postpone the purchase of land and construction of buildings for two years after delivery of the securities, in order that the school should be founded with the accumulated interest in that period, without reducing the principal sum for that purpose. The executors and appointed heirs were directed to transmit to the municipality of New York, a copy of the clauses of the will relating to the institution, and the testator requested the municipal authorities to watch over and care for the fulfillment and performance of the will in this regard. The trustees were appointed in conformity with the terms of the will and accepted the trust and have been made defendants in this action. The plaintiffs, as ancillary executors, have possession of the securities devoted by the will to the founding of the home and hold the fund bequeathed, subject to the order and direction of the court. The trustees, or philanthropic managers, as they are designated by the will, applied to the legislature of this state for incorporation, and upon this application chapter 17 of the Laws of 1889 was enacted, by which they and such other persons as they might associate with themselves, in accordance with the provisions of the will, were created a body corporate and politic under the name and title of the "Sevilla Home for Children." The incorporators were by name declared to be the permanent trustees of the corporation in accordance with the will of the testator, and in case of a vacancy by death, resignation or otherwise, the survivors were empowered to fill it in accordance with the directions of

the will, as near as may be, so that the number should be
kept at seven.    The trustees were given full power to control
and manage the corporation, and for that purpose to make
by-laws and appoint such agents and officers as might be deemed
necessary, and to fix their tenure of office as well as their own.
The corporation was declared to possess all the powers and,
except as otherwise provided by the act, to be subject to the
provisions of the Revised Statutes.    It was expressly empow-
ered and directed to accept and receive the gift bequeathed
by the will, upon the terms and conditions there expressed,
and power was conferred upon it to enter into any obligation
in order to secure compliance with such terms and conditions.
In addition to the powers conferred by law upon corporations,
it was declared that this corporation should have power and
capacity to establish and maintain a home for the education of
poor children in the city of New York as provided in the will,
and for that purpose to demand and receive the fund
bequeathed by the will for that purpose, and to hold, manage
and dispose of the same in such manner as might be best calcu-
lated to carry out the objects and purposes indicated by the
testator.    The trustees accepted the trust under the act of
incorporation and organized under it.    The will contains
various other large bequests to relatives and friends and for
charitable purposes, the validity of which are not involved in
this action, and, so far as appears, they are not questioned by
any one.    In the thirty-sixth clause, the persons are designated
by the testator who were empowered to administer the estate
and carry out the will, and, in what seems to be the language
of Peruvian law, they are called executors and appointed or
testamentary heirs, and they were, by the terms of the will,
to co-operate with the trustees in founding the institution and
administering the gift.

   The plaintiffs, in their complaint, state all the facts and ask
for the judgment of the court with reference to the dispo-
sition of the fund in their hands.    The defendants are the
trustees named in the will and the corporate body created
upon their application and the executors, appointed heirs and

residuary legatees named by the testator. It appears that they were all served, but none of them answered or made any claim to the fund except the corporation known as the Sevilla Home for Children, the trustees and the Sociedad de Beneficiencia de Lima, one of the residuary legatees. The latter is the only party to the action who really disputes the right of the corporation or the trustees to the fund. The will directed that said Sociedad should receive the various legacies of public interest, and should deliver them over to the respective institutions in the will named, and that if any such institutions should decline to receive the same, the legacy to it should pass to said Sociedad.

The learned judge, before whom the cause was tried at the Special Term, held that the bequest for the Sevilla Home was void, as contravening the statute of this state against perpetuities and for other reasons, and that none of the defendants were entitled to receive the gift, and he directed that the plaintiffs account for the fund to the executors and appointed heirs in Peru, and to that end that the fund be remitted to that country without determining to whom the beneficial interest in the fund belonged. The General Term has affirmed the judgment, and the Sevilla Home and its individual trustees have appealed to this court.

At every stage of the inquiry pressed upon us by this appeal, it is important to keep in view a fundamental fact, established by uncontradicted evidence at the trial and conceded upon the argument, and that is that the bequest to the Sevilla Home was perfectly valid by the law of Peru, the domicile of the testator, which governed his personal property, wherever it was at the time of his death. The validity of the gift by the law of the domicile necessarily involves the conclusion that it is not affected, under that law, by the fact that at the time of the testator's death there was no trustee competent to take, or that the estate did not vest within a period measured by lives, or by the general and indefinite nature of the trust, nor any other local rule that would defeat the intention of the testator in case it had been a domestic will. The general principle

that a disposition of personal property, valid at the domicile of the owner, is valid everywhere, is of universal application. It had its origin in that international comity which was one of the first fruits of civilization, and in this age, when business intercourse and the process of accumulating property take but little notice of boundary lines, the practical wisdom and justice of the rule is more apparent than ever. It would be contrary to the principles of common justice and right upon which the rule is founded, to permit a testamentary disposition of personal property, valid by the law of the domicile, to be annulled or questioned in every other country where jurisdiction was obtained over the property disposed of or the parties claiming it, except for the gravest reasons. There are, no doubt, some exceptions to the rule founded upon considerations of public policy and necessity. Foreign contracts or dispositions of property which, if carried out, would endanger the public morals or the public safety, or undermine the political or social fabric, or subvert the administration of justice, or had other evil tendencies, are not within the rule, as the right and duty of self-preservation is higher and stronger in every community than any obligation founded in comity.

But the object of this bequest, instead of tending to such results, was highly laudable and commendable, and certainly there is no public policy that forbids its execution. The law allows and in every proper way encourages such gifts, and sustains them, when capable of execution, and even when they are not, it does not hold them void, if valid under the law of the domicile, and it is only in cases where there is no adequate legal regulation for administering or carrying them into effect that the property will be remitted to the government of the domicile for administration. None of the parties in this case have acquired any title to the fund in question that they are not given by the law of Peru. Our courts may in certain cases decline to administer the gift, and remit the property to the principal seat of administration, but they cannot divest the title of one or transfer it to another contrary to the law of the domicile. That law is part of the disposition and the foundation

of all title under it, and it cannot be disregarded to the preju-
dice of one and the benefit of another any more than the
other parts of the instrument.   There is no law that forbids
gifts to charity here by testators in other countries, or that
requires us to reject the gift unless it is made, in all respects,
in conformity with our local law.   There is no public policy
on that subject except what is to be found in the language of
the statute, and that provides that " the absolute ownership of
personal property shall not be suspended by any limitation or
condition whatever, for a longer period than during the con-
tinuance and until the termination of not more than two lives
in being at the date of the instrument containing such limita-
tion or condition ; or, if such instrument be a will, for not
more than two lives in being at the death of the testator."
(2 R. S. [6th ed.] p. 1167.)

When that statute was passed it was not within the legisla-
tive purpose to interdict dispositions made in other countries
to take effect here.   There is nothing in the language used
that indicates such a purpose.   There are other statutes that
invalidate testamentary gifts to certain corporations unless
made within a certain time before death where the testator
had wife, children or parents.   The purpose of these statutes
is evident.   They were intended to prevent improvident and
hasty bequests to the prejudice or neglect of those natural
obligations which the law also imposes upon the citizen.   But
these restraints applied to members of the political community
from which the law emanated and not to persons in other
countries where no such restrictions existed, and who desired
to give according to their own laws.   Bequests by such per-
sons to those corporations, without regarding the statutes
referred to, would be good if valid at the domicile of the tes-
tator.   (*Hollis* v. *Drew Theo. Seminary*, 95 N. Y. 171.)   It
is no part of our public policy to condemn such gifts to chari-
table or benevolent corporations here.   Our law permits the
citizens or subjects of other countries to dispense charity here
in such measure as they wish and according to such methods
as their own laws prescribe.   The policy that dictated our

statutes against perpetuities and accumulations did not antic-
ipate any danger from abroad, and our recent decisions are
to the effect that they are local in their general scope and
effect. (*Cross* v. *U. S. Trust Co.*, 131 N. Y. 330; *Hope* v.
*Brewer*, 136 id. 126.)

In the first case cited we held that a testamentary dispo-
sition of personal property in trust, by a person domiciled in
another state, valid by the law of the domicile, though in
some respects contrary to our statute, was not void, and we
refused to annul the will of the testator that had taken effect
and been acted upon here for many years. · In the second
case we refused to interfere with a testamentary disposition in
a domestic will, containing a trust for a charity· in a foreign
country, where it was valid and capable of being executed
and enforced, although perhaps under our law the beneficiaries
were not sufficiently defined and it may have been open to
other objections. The trend of these cases is unquestionably
towards the conclusion that our statutes apply to domestic
wills that by their provisions are to be executed here. An
accumulation to take effect in another country or a bequest
made there to take effect here was not within the intention of
the legislature when these statutes were framed. There is,
however, this clear distinction between the cases cited and the
one at bar. In the former we were not asked to aid in any
way the execution of the will or the administration of the
trust, but to declare it void at the suit of heirs or next of kin.
The parties who stood upon the dispositions of the will simply
asked us to allow them to execute the testator's purpose with
respect to his property and to manage their own business in
their own way. But in this case we are asked, virtually, to
put the Sevilla Home in possession and control of the fund
and thus give active aid and assistance in the enforcement of
a trust, which, in a domestic will, would doubtless be void, and
therein is the real difficulty which the situation presents. The
objection to this relief, which, under ordinary circumstances,
might be formidable, has been, we think, greatly obviated, if
not entirely removed, by the legislation which has been

SICKELS — VOL. XCV.          6

enacted since the death of the testator. That has a much broader scope and operation than the mere creation of a corporate body. It is an expression of the will of the supreme legislative power that the gift in question should be received and administered in the manner and for the objects designated in the will, as near as may be, and thus every existing legal obstacle to the execution of the testator's purpose must be deemed to have been suspended or *pro tanto* repealed. The legislature in effect said that, notwithstanding the indefinite nature of the trust, if it was indefinite, or the circumstance that the testator did not appoint a trustee competent to take, or that the absolute ownership was suspended for a period not measured by lives, this gift shall take effect, according to the intention of the donor, and be administered by a corporate body of its own creation. The legislature had the power to so enact unless, in the meantime, the title or beneficial interest had vested in heirs, next of kin or legatees, and, as under the law of the domicile, it did not, the power of the legislature to accept a gift that was awaiting a competent trustee to administer it, cannot well be doubted. It is not important to ascertain or decide where the title to the fund was lodged in the meantime. It was wherever the law of Peru placed it. Whether in the executors, for the purpose of delivering it to the trustees, or in abeyance, it matters not. So long as that law would not permit it to vest in any other person, or for any other purpose, no property right was violated by the legislation. Had the title vested elsewhere, in the meantime, in consequence of the invalidity of the bequest, or for any reason, of course that title could not be disturbed by the legislature. But by force of the law of the domicile upon the facts disclosed by the record, if the fund should be remitted to the executors in Peru, pursuant to the judgment, they would, in the discharge of the trust imposed upon them by the testator, be bound to pay it over to the Sevilla Home for the purpose declared in the will, as the legislature had, subsequent to the death of their testator, created a competent body to execute that purpose without affecting any private right.

The necessity or expense of such circumlocution is not perceived. Generally whatever the law will permit to be done indirectly may be done directly.

There is another and more recent statute that has some application to this case, as it is the last expression of the legislative will on the subject, and discloses what our public policy is with regard to such bequests. By chapter 701 of the Laws of 1893, entitled " An act to regulate gifts for charitable purposes," it is enacted that no such gift, when valid in other respects under the law of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries in the instrument creating the same. That in such cases when a trustee is named the title shall vest in him, and if no person is named as trustee, then the title shall vest in the Supreme Court, and in all cases of bequests to charitable uses, where the beneficiaries are not definitely designated, that court shall have full control, and it shall be the duty of the attorney-general to enforce the trust and represent the beneficiaries. This statute indicates an intention on the part of the legislature to enforce and uphold charitable bequests not heretofore recognized as valid, and it may be regarded as the first step in the direction of modifying that body of law which this court has built up on the ruins of the system outlined in *Williams* v. *Williams* (8 N. Y. 525).

The result which the second division of this court was constrained to reach in a recent case of public importance, no doubt had some influence in creating the sentiment which is embodied in the law. (*Tilden* v. *Green*, 130 N. Y. 29.)

It seems to be assumed, on the part of the respondents, that these statutes can have no application to this case, inasmuch as they were not enacted until after the testator's death. That would be so had the property vested otherwise than for the purpose of founding the home; but as it did not under the law of the domicile it could not under the law of the forum. When a court of equity obtains jurisdiction and all the facts are before it by supplemental pleading, as they are here, it may and generally does adapt the relief to the situation exist-

ing at the close of the litigation. (*Peck* v. *Goodberlett*, 109 N. Y. 181 ; *Mad. Ave. Bap. Ch.* v. *Oliver St. Bap. Ch.*, 73 id. 83.)

The case turned in the court below upon views of public policy with respect to the enforcement of the donor's will, but what that policy actually is should be determined by the situation existing at the time the court is required to make its decree disposing of the fund, and the statutes referred to have an important bearing upon that question.

It is urged that the corporation created at the request of the philanthropic managers and known as the "Sevilla Home for Children," is not the instrument or agency which the testator selected for the execution of his purpose, and that to permit it to receive the fund and found the institution is practically making a new will. We are not impressed with the force of this objection. The testator did not profess to be and evidently was not informed with respect to the legal formalities and details which were necessary in another country to carry his purpose into effect. The trustees were, therefore, charged with the duty of making effective the object he had in view through such legal organization as became necessary, and if it became essential, as it did, to clothe themselves with corporate powers, that was fairly within the scope of the general scheme just as it would be to organize the board in any other way. Moreover, it is reasonable to conclude that when the testator charged the municipal authorities of New York with the duty of watching over the institution which he desired to found and to see to it that his purpose was carried out, he contemplated some action on the part of the government, within whose jurisdiction the institution was to exist, and so the state, in the exercise of its plenary power, created a corporate body to receive and administer the gift to the end that the purpose of the donor should not be frustrated. This was in aid of the general scheme and did not divert the fund to other hands or subject it to control and management not fairly within the testator's intention. The appeal which he made to public authority was a fair subject

for the consideration of the legislature, and it was heard in a manner that did not contravene the law under which the disposition was made, or ignore his will.

The interference of the legislature for the purpose of validating gifts to charity in foreign wills to take effect here, which would be invalid in domestic wills, is not a new or extraordinary exercise of its authority. Chapter 241 of the Laws of 1876 was passed for that purpose and effect was thereby given to such a bequest in a Massachusetts will where it was held to be valid by the courts of that state though, but for the statute, it would not have been enforceable here. (*Fellows* v. *Miner,* 119 Mass. 541.)

The discussion thus far has left entirely out of view the claim of the defendant, the Sociedad de Beneficiencia de Lima, as residuary legatee. It is not necessary to refer to all the questions involved in the argument in its behalf as they are all disposed of by a few propositions which, I think, are controlling. In its answer it is expressly admitted that the will is valid under Peruvian law, but it is alleged that, by the terms of the instrument, it became entitled to receive the bequests to the institutions named therein in case the donees refused to receive them or when the designated beneficiary was unable to take, or when the bequests prove to be inadequate for the specific objects, but it is not alleged that any of these contingencies have happened or that any of the conditions upon which the alleged right depended exist. The claim to the fund is founded upon the will, and that alone. The meaning of the language which the testator employed, and its legal effect and construction, must be determined by the law of the domicile, and it is not alleged or claimed that when thus construed any title or interest in the fund in question vested or can vest in this defendant, but the contrary is clearly involved in the admission that the bequest to found the home is valid under the foreign law. The contention of the Sociedad seems to be that the bequest is not one that would be recognized as valid in a domestic will, and, therefore, our courts should construe the will, and adjudge

it to be entitled to the fund. This position is based upon a misapprehension in regard to the true nature and character of the jurisdiction which courts have long been accustomed to exercise in such cases. Our courts cannot confer title to personal property under a foreign will, upon a claimant here, otherwise than in accordance with the law of the country where the owner was domiciled when he made the will. That law must first determine where the title goes. We may adopt our own methods for ascertaining by proof, or otherwise, what the foreign law is, as a question of fact, but once ascertained, it must be applied in determining the rights of parties who have invoked the jurisdiction of our courts for the settlement of their claims to the property. When the exercise of this jurisdiction involves the violation of some rule or principle of public policy the courts may decline to proceed any further, and remit the property or its proceeds to the home tribunals. (*Despard* v. *Churchill*, 53 N. Y. 198.) The Sociedad does not in its answer, or in the argument before this court, ask us to remit the fund to Peru, but to adjudge that it is entitled to it under the will, construed by our law, contrary to the law of the country which conferred upon the testator the power to make it, and which is the source from which its own corporate existence and capacity to hold property are derived. This would require us to disregard not only the rules of comity that prevail, and are recognized and acted upon by all civilized nations, but principles of common justice applicable to property rights as well. There is still another answer to the contention. We have seen that the only issue that the Sociedad made in the courts below was one of title to the fund under the will, when construed according to our law. The trial court was requested in various forms to rule and decide that the title to the fund vested in it, and that it was entitled to receive it, which requests were refused and exceptions taken.

The appeal to the General Term by the Sociedad resulted in an affirmance of the judgment, but it has taken no appeal to this court, and in this state of the record, I am unable to

see how its claims or the questions which it raised below are before us.

It is proper, however, to say that we have examined the clauses of the will upon which the claims are based, and are of the opinion that, even if we felt at liberty to construe the language for ourselves, as in cases of domestic wills, instead of adopting the construction which the law of Peru imports into the instrument, the testator did not intend upon any contingency that has occurred, to vest the title in this defendant.

The will probably does confer upon it some power with reference to the collection, receipt and disbursement of the assets of the estate, but even this could hardly be held to apply to the fund in question, unless at the time of the testator's death the property was in Peru.    There is nothing in the language used that would require a court to hold that the testator required the securities found here to be first transmitted to the Sociedad in Lima, before they could be devoted to the founding of the home.    The contingencies upon which certain bequests were to fall into the residuary fund, are to be understood in the light of the law under which the disposition was made, and thus construed this is not a case where the gift fails for want of a beneficiary or trustee competent to take.

There are some minor questions in the case, but the view taken in regard to the effect of the law of the domicile and the legislation of this state upon the rights of the parties, renders it unnecessary to consider them, and this necessarily leads to the conclusion that the defendant corporation, the Sevilla Home for Children, is entitled to the fund for the purpose indicated in the will and the act of incorporation.

This court has the power to direct a final judgment that the plaintiffs as ancillary executors discharge the debts of the testator, if any, remaining in this state, and pay the balance of the fund to the home.    (Code, § 2701.)    There are no disputed questions of fact, and there seems to be no necessity for another trial.    Final judgment should, therefore, be directed in accordance with the principles herein stated.

The judgment should be reversed, and final judgment directed in favor of the Sevilla Home for Children, with costs to all parties, as awarded by the courts below, and to the plaintiffs in this court, payable out of the fund.

All concur.

Judgment accordingly.