#### (Surrogate's Court, Washington County. February 28, 1898.)

1. PROBATE OF WILL—EXECUTOR'S RIGHT TO CONTEST.
   Under Code, § 2624 (providing that if a party puts in issue, before the surrogate, the validity or construction of any disposition of personalty under a will of a resident, the surrogate must determine the question), a mere executor, not claiming as legatee or under the statute of distribution by reason of some invalid disposition, cannot put in issue, by an answer to his petition for its probate, the validity and effect of dispositions of personalty made in such a will.

2. WILLS—CONSTRUCTION—CONFLICT OF LAWS.
   A bequest in a will executed by a testator residing in this state, valid if the legatee had resided here, but void by the statutes of the state where the legatee resides, is consequently void in New York.

3. FOREIGN STATUTE—CONSTRUCTION.
   The decision of an inferior court of foreign jurisdiction, construing a statute of its own state, will not be considered against the authority of the court of highest appellate jurisdiction in New York in a matter in the surrogate's court of this state, involving a construction of the same statute.

In the matter of the probate of the last will and testament of William D. Robertson, deceased. Answers of John McA. Reid, an executor, and Mary E. Robertson, one of the legatees, to the petition, were filed, to put in issue the validity, construction, and effect of dispositions made by the second and twentieth clauses of the will. Decree ordered dismissing the executor's answer, declaring the second clause invalid, and the twentieth clause also invalid as to certain bequests.

C. C. Van Kirk, for proponents.

John B. Conway, for contestants John McA. Reid and Mary E. Robertson.

INGALSBE, S. The testator died July 6, 1897. His will was executed within the state, June 10, 1897, less than one calendar month

before his death.    At the time of the execution of his will, and at his
death, he was a resident of the state of New York.    He left eight
nephews and nieces as his only next of kin and heirs at law.    The
amount of personal property disposed of in the twentieth and residu-
ary clause of his will is upwards of $15,000.    None of the assets of
the decedent were located at the time of his death in the state of Penn-
sylvania.    The second and twentieth clauses of his will read as fol-
lows:

"Second. I give, will, and bequeath to the Boards of Missions of the United
Presbyterian Church of North America the sum of three thousand ($3,000.00) dol-
lars, one thousand ($1,000.00) dollars of which is to be used for the benefit
and use of the Home Mission work, one thousand ($1,000.00) for the benefit and
use of the Freedman's Mission work, and the other one thousand ($1,000.00)
dollars to be for the benefit and use of Foreign Missions; and I direct that a
receipt for said amount from the treasurer or other proper officer of said board
of missions shall be a sufficient receipt or voucher for my executors on their
final settlement, and conclusive as such."

"Twentieth. I give, will, and bequeath all the rest, residue, and remainder
of my estate, of every name and nature, to my grandniece Stella Small and
the Boards of Missions of the United Presbyterian Church of North America,
to be divided equally between them, each to have one-quarter."

The Boards of Missions of the United Presbyterian Church of North
America mentioned in these clauses are each duly incorporated un-
der the laws of the state of Pennsylvania, and bear the following
names: "The Board of Home Missions of the United Presbyterian
Church of North America," "The Board of Missions to the Freedmen of
the General Assembly of the United Presbyterian Church of North
America," and "The Board of Foreign Missions of the United Presby-
terian Church of North America."    The objects and purposes of each
of these boards are religious and charitable, and the legacies in the
second and twentieth clauses of the will, to these societies, are for such
objects and purposes.

John McA. Reid, an executor and one of the petitioners for the pro-
bate of the will, presents an answer to the petition, and seeks to put
in issue the validity, construction, and effect of the disposition of
personal property to the Boards of Missions provided for in the second
and twentieth clauses of the will.    The answer is presented under
section 2624 of the Code, which provides that:

"If a party expressly puts in issue, before the surrogate, the validity, con-
struction, or effect of any disposition of personal property, contained in a will
of a resident of the state, executed within the state, the surrogate must deter-
mine the question."

Under the reading of this clause, it is claimed that Mr. Reid can
present this issue, for he is a party to the proceeding.    But he is one
of the proponents.    He is not a legatee or next of kin.    His primary
duty is to see that the will is probated, and not that it is declared in-
valid either in whole or in part.    He has no interest in the estate ex-
cept as an executor of the will.

Section 2624 is a general enactment along the line of an earlier
statute applying to the surrogate's court of the county of New York.
This statute (section 11, c. 359, Laws 1870) reads:

"In case the validity of any of the dispositions contained in such will is
contested, or their construction or legal effect are called in question, by any

of the heirs, or next of kin of the deceased, or any legatee or devisee named in the will, the surrogate shall have the same power and jurisdiction as is now vested in, and exercised by, the supreme court, to pass upon and determine the true construction, validity and legal effect thereof."

Commissioner Throope, in his note to section 2624 of the Code, says that it was taken from this provision of the law of 1870, and that:

"It has been so formed as to confine its application to a strictly domestic will, and to a will of personal property, and as thus amended, the provision has been extended to all surrogate's courts."

Thus, evidently, it was not the intention of the codifier to alter or vary the meaning of the act of 1870, except to restrict it in certain particulars.   Under the provisions of that act, there is no question but that Mr. Reid would be precluded from interposing his answer herein, raising the question of validity.   It would seem, on general principles of interpretation, that no person should be entitled to an adjudication, under this section, as to the validity of a will, unless he claims some interest under it, in the personalty bequeathed, or that, by reason of some invalid disposition of such personalty, he is entitled to a share of the same under the statute of distributions.   Mr. Reid occupies neither of these positions.   He is not a legatee or one of the next of kin of the decedent.   He has no such interest as should enable him to invoke the jurisdiction of this court, under section 2624.

Mary E. Robertson, a niece and one of the next of kin of the decedent, and a legatee named in the will, also intervenes, and interposes an answer to the petition herein, asking that the "disposition of personal property in said will contained to said Boards of Missions be adjudged illegal, invalid, and void."   In support of this contention, a Pennsylvania statute enacted in 1855 is cited.   This law is entitled "An act relating to corporations and to estate held for corporate, religious and charitable uses."   We are concerned only with the eleventh and fifteenth sections of this act, which read as follows:

"Sec. 11. No estate,. real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible, and at the same time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor, and all dispositions of property contrary hereto, shall be void, and go to the residuary legatee or devisee, next of kin or heirs, according to law, provided that any dispositions of property within said period, bona fide, made for a fair, valuable consideration, shall not be hereby avoided."

"Sec. 15. All dispositions of property hereafter made to religious, charitable, literary, or scientific uses, and all incorporations or associations formed for such objects shall be taken to have been made and formed under, and in subordination to all the duties and requirements of this act, as rules of property and laws for their government."

In the case of Kerr v. Dougherty, 79 N. Y. 327, the decedent's will was executed December 8, 1896.   He was a resident of the state of New York, and died December 31, 1896, within one calendar month after its execution.   In the tenth clause of his will he bequeathed the sum of $5,000 to the trustees of the General Assembly of the Presbyterian Church of the United States of America, for religious and charitable purposes.   The legatee was a corporation organized under the laws of the state of Pennsylvania, for religious

and charitable objects.    In that case the court of appeals held that the bequest, being in contravention of the Pennsylvania statute of 1855, was void in Pennsylvania, where the legatee was organized and had a domicile, and was consequently void in New York, where the testator resided.    In the prevailing opinion, the majority of the court fortified its position by reference to an earlier decision in the same court (Chamberlain v. Chamberlain, 43 N. Y. 424), in which it was held that the validity of the bequests of a will will depend on the law of the legatee's domicile, and of the government to which the fund is to be transmitted ·for administration.    Judge Allen, in this earlier case, wrote:

"Whatever may be the law of Pennsylvania, a testator domiciled in that state cannot establish, by bequests of personalty to citizens or corporations of this state, a charity or trust to be administered here, inconsistent with the policy or the laws of this state.    A gift by will of a citizen of this state to a charity. or upon a trust to be administered in a sister state, which would be lawful in this state, the domicile of the donor, would not be sustained if it was not in accordance with the laws of the state in which the fund was to be administered."

In every essential fact the case at bar is precisely similar to that of Kerr v. Dougherty.    In no way can they be distinguished or can any distinction be drawn between them as to the facts or principles involved.    The learned counsel for the proponent claims, however, that the decision of the court in Kerr v. Dougherty has been overruled by later decisions in every principle that applies to the case under consideration. ·  In support of this contention, he cites Hope v. Brewer, 136 N. Y. 138, 32 N. E. 558.    In this case it is simply held that bequests valid at the testator's residence are valid everywhere, if the legatees have the legal capacity to take and administer the bequests. ·  In Kerr v. Dougherty it is decided that the limitation of the Pennsylvania statute applied to the power to take as well as to the power to give, and that the legatee in that case had no power to take.    There is no variance in these holdings of the court. The doctrine enunciated in Hope v. Brewer, indeed, distinctly affirms that laid down in Kerr v. Dougherty.

The proponent also cites the case of Dammert v. Osborn, 140 N. Y. 30, 35 N. E. 407.    A careful study, however, of the very able opinion in that case, shows conclusively that the decision is not in conflict with that of Kerr v. Dougherty, but rather in entire harmony with it.    In Dammert v. Osborn the testator was domiciled and died in Peru, but his property at the time of his death was largely within this state.    In his will he provided for the establishment in New York City of a home for poor children.    It was contended that the legacy was void because in contravention of the statutes of New York against perpetuities.    Judge O'Brien, in his opinion, says:

"The law allows, and in every way encourages, such gifts, and sustains them when capable of execution.   *   *   *   There is no law that forbids gifts to charity here by testators in other countries, or ·that requires us to reject the gift unless it is made in all respects in conformity with our local law.   *   *   *   When that statute, as to suspension of alienation, was passed, it was not within the legislative purposes to interdict dispositions made in other countries, to take effect here.    There is nothing in the language used that indicates such a pur-

pose. * * * Our law permits the citizens or subjects of other countries to dispense charity here in such measure as they wish, and according to such methods as their own laws prescribe."

Evidently, the learned judge had in mind the case of Kerr v. Dougherty, in which it is expressly held that in Pennsylvania, under the statute of 1855, the right to take the bequest was absolutely denied. Our statutes allow such bequests, while the law of Pennsylvania forbids them. The decision in Dammert v. Osborn not only does not conflict with that of Kerr v. Dougherty, but is in full agreement with it.

It is further argued against the acceptance in this court of the decision in Kerr v. Dougherty that Judge Earle dissented from the doctrine as promulgated by a majority of the court, and that he wrote a very able and logical dissenting opinion. This is correct, but four years later, in writing upon the same question, in Hollis v. Seminary, 95 N. Y. 166, he held that gifts to charitable, benevolent, scientific, or educational institutions are not against public policy, and that there is no public policy outside of the statutes which condemns testamentary gifts as to such institutions, which was precisely the theory of Kerr v. Dougherty, where a statute is held to preclude the bequest. In his opinion in this case, Judge Earle expressly commends and confirms the decision of the court in Kerr v. Dougherty, in the following language:

"There, too, there was under consideration a bequest to a Pennsylvania corporation; and, if that bequest had been void as against the public policy of this state, there would have been no occasion to resort to the law of Pennsylvania, and to hold, as we did, that the bequest was void because of an act of that state which prohibited such bequests by a will executed within a month before the death of the testator."

The decision of a Pennsylvania court of inferior jurisdiction (Hildeburn's Estate, 16 Pa. Co. Ct. R. 39) is cited, which construes the statute of 1855 differently from the court of appeals of New York. This county court decision holds that Pennsylvania corporations are not by that act precluded from taking bequests valid at the place of the testator's residence. Under the well-established rules of res judicata, this decision of an inferior court in a foreign jurisdiction can receive no consideration here, as against the authority of our own court of highest appellate jurisdiction. Moreover, the courts of our state have considered the question involved, since this decision was rendered in the inferior Pennsylvania court. In Carter v. Board, 68 Hun, 436, 23 N. Y. Supp. 95, the validity of a bequest to the defendant, a Pennsylvania corporation, whose purposes were religious and charitable, was in controversy. The testator died within one calendar month after the execution of his will. The general term unanimously adjudged the bequest to the board of education void, citing Kerr v. Dougherty as authority. This was several years after the county court of Pennsylvania had rendered its decision. The case was carried to the court of appeals, and there the phase of it which is of interest to us was disposed of in the following language, in the opinion of Judge Gray, 144 N. Y. 621, 39 N. E. 628: "Two of the specific bequests to the religious corpora-

tions, one of which was the one to the board of education, were declared to be invalid, and their invalidity is not in question here." Thus, as late as 1893 the authority of Kerr v. Dougherty was distinctly reaffirmed in this state by the supreme court at general term, and in 1895 the doctrine of that case was recognized by the court of appeals.

A decree should be entered herein admitting the will of the decedent to probate, dismissing the answer of the executor and petitioner John McA. Reid, declaring the second clause of the said will invalid and void, and adjudging the twentieth clause thereof also invalid and void so far as the same bequeaths of the personal property of the decedent to the Boards of Missions of the United Presbyterian Church of North America.