**LIBERTY NAT. BANK & TRUST CO. IN NEW YORK v. NEW ENGLAND INVESTORS SHARES, Inc., et al.**

District Court, D. Massachusetts. April 4, 1928.

No. 2941.

**1. Contracts ⬅144—Court will respect intention of parties stipulating that rights and duties shall be determined according to laws of particular jurisdiction.**

When parties to an instrument have stipulated that their rights and duties shall be determined according to the laws of a particular jurisdiction, their intention will be respected by the court.

**2. Trusts ⬅2—Validity of trust consisting of personalty is determinable by law of settlor's domicile.**

Validity of trust consisting of personalty is to be determined according to law of domicile ·of settlor.

**3. Perpetuities ⬅4(15), 7(2)—Trust in personalty limited to period less than 21 years held not void under Massachusetts law as creating perpetuity or imposing restraint on alienation.**

A trust consisting of personal property, limited by its terms to a period of years less than 21, held, not void under Massachusetts law ·as creating a perpetuity or imposing a restraint ·on alienation.

**4. Perpetuities ⬅4(15), 7(2)—Trust authorizing settlor te sell underlying securities and holders of collateral trustee shares to exchange them for underlying securities, did not violate rule against perpetuities (Personal Property Law N. Y. § 11).**

Where a trust consisting of capital stock and underlying securities retained power in settlor to sell underlying securities for purpose of reinvestment, and authorized holders of collateral trustee's shares to surrender certificates and receive a unit of underlying securities in exchange therefor, the trust was not invalid, as violating rule against perpetuities, either under the law of Massachusetts, or under Personal Property Law N. Y. (Consol. Laws, c. 41) § 11, since rule against perpetuities is directed against suspension of absolute ownership or power of alienation.

**5. Trusts ⬅147(1)—Law prohibiting alienation of beneficiaries' interests held inapplicable ·to trust created for settlor's benefit and granting interest te holders of beneficial interest (Personal Property Law N. Y. § 15).**

Personal Property Law N. Y. (Consol. Laws, c. 41) § 15, relative to alienation of interest of beneficiary in trust, held, inapplicable as to trust created for benefit of settlor and granting holders of beneficial interest an interest in trust fund as well as right to income; such section covering only cases where life tenant is entitled only to income, and has no further interest in trust fund.

In Equity. Suit by the Liberty National Bank & Trust Company in New York against the New England Investors Shares, Inc., formerly the New England Investment Trust, Inc., and another. Decree for plaintiff.

John P. Wright and Tyler, Eames, Wright & Hooper, all of Boston, Mass., for plaintiff.

J. F. Bassity, of Boston, Mass., for defendant New England Investors Shares, Inc.

Jacobs & Jacobs and Jos. B. Jacobs, all of Boston, Mass., for defendant Goodwin.

Wayland F. Dorothy, of Boston, Mass., for S. H. Dorothy, shareholder.

BREWSTER, District Judge. This is a bill in equity in the form of a bill for instructions brought by the plaintiff, a New York corporation, against the New England Investors Shares, Inc. (hereinafter referred to as the Investment Company) a Massachusetts corporation, and Robert E. Goodwin, as receiver in bankruptcy of the investment company. The investment company has not been adjudicated bankrupt. Both defendants filed answers in which most of the allegations of the bill of complaint are admitted. So far as they are not admitted, they have been established by evidence offered on behalf of the plaintiff.

It appears that on April 16, 1927, the

investment company became the settlor under a declaration of trust in which the plaintiff was named as trustee. The res of the trust at the time consisted of one unit of 132 shares of the capital stock of various corporations. The equitable or beneficial interest in the trust res was represented by 1,000 shares, known as "collateral trustee shares." Under the terms of the declaration of trust, other units were deposited from time to time and collateral trustee shares issued against these units, so that, at the time of the hearing, there were outstanding 263,-881 collateral trustee shares and 119 unissued shares held by the plaintiff subject to the order of the investment company. Of the outstanding collateral trustee shares the investment company holds between five and six hundred.

It further appeared that several holders of collateral trustee shares had presented their certificates for transfer in accordance with the terms of the trust; that the terms of the trust required all certificates to be executed by the officers of the investment company, and that the number of signed certificates on hand, available for use in consummating transfers, was limited; that holders of certificates, representing in the aggregate 1,000 collateral trustee shares, had demanded that the plaintiff deliver to them underlying securities constituting a unit, with accrued dividends, in conformity with the provisions of article IV of the declaration of trust.

Question having arisen as to the rights and duties of the plaintiff in the premises, this proceeding was instituted in order that the court might determine plaintiff's rights and duties (a) with respect to transfer of collateral trustee shares now or hereafter presented; (b) with respect to delivery of underlying certificates and accrued dividends; (c) with respect to sale and reinvestment of underlying securities, in the event of failure on the part of the depositor to seasonably act; and it also asks instructions regarding the duty of the depositor to furnish additional signed certificates.

The doubts entertained by the plaintiff respecting its duties and rights spring from the fact that certain creditors of the investment company have assailed the validity of the trust. At the request of the court, the attorneys for the receiver have submitted as amicus curiæ a brief in which the various contentions of creditors have been presented, with citations of authorities which were thought to support the contentions.

The trust indenture contains the usual elaborate provisions found in instruments creating trusts for business or commercial purposes. It will be necessary to refer to only a few of these provisions. Article VII of the declaration of trust provides that the trust shall continue until terminated as provided therein, but "in no event shall such trust continue longer than the 1st day of January, 1948." The article provides for earlier termination by the investment company at any time as of the end of any semiannual dividend period, unless 25 per cent. in amount of the holders of collateral trustee shares disapprove.

It is contended that the trust is void because the absolute ownership of the trust property is suspended beyond the period limited by section 11 of the New York Personal Property Law (Consol. Laws, c. 41), which reads as follows:

"The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition. * * * In other respects limitations of future or contingent interests in personal property, are subject to the rules prescribed in relation to future estates in real property."

In support of this contention it is argued that absolute ownership may be suspended by the creation of a trust which vests the estate in trustees, citing Smith v. Edwards, 88 N. Y. 93, and Steinway v. Steinway, 163 N. Y. 183, 57 N. E. 312, and that the duration of a trust of personal property, like a trust in real estate, must be founded on lives in being. No term of years, however short, will satisfy the statute. Underwood v. Curtis, 127 N. Y. 523, 28 N. E. 585.

In order to dispose of this contention, it may be well first to consider whether the rights and duties of the respective parties to the trust are to be determined with reference to the laws of New York or the laws of Massachusetts.

By the terms of the certificate representing the collateral trustee shares, the registered holders thereof assent to the terms, conditions, and provisions of the declaration of trust, and agree that these shall in all respects govern the respective rights and stipulations of all parties. One of the provisions of the declaration of trust is that " * * * All questions concerning the terms, provisions and effect of this agreement and declaration of trust or of the certificates issued hereunder, shall be deter-

mined exclusively according to the laws of the commonwealth of Massachusetts, and shall be adjudicated solely by the proper tribunals in said state. * * * " Article XVII, § 6.

[1] It is obvious, in view of these provisions, that an investor was justified in the belief that he was acquiring an equitable interest in a Massachusetts trust, one of that class of voluntary associations, organized for profit, which within a comparatively recent period have developed under the laws of that state until now they have become familiar means of carrying on business, whether financial, commercial, or industrial. The manifest intention of all parties to the trust, including settlor, trustee, and shareholder, was that their respective rights and duties were to be controlled by the laws of Massachusetts, and there would seem to be no good reason for disregarding the familiar rule that, when parties to an instrument have stipulated that their rights and duties shall be determined according to the laws of a particular jurisdiction, their intention will be respected by the court. 13 Corpus Juris, 251, and cases cited; New England Oil Corp. v. Island Oil Marketing Corp. (C. C. A.) 288 F. 961; New York Life Ins. Co. v. Dodge, 246 U. S. 357, 38 S. Ct. 337, 62 L. Ed 772, Ann. Cas. 1918E, 593; London Assurance v. Companhia De Moagens Do Barreiro, 167 U. S. 149, 161, 17 S. Ct. 785, 42 L. Ed. 113.

[2] But it would seem that, quite apart from the expressed provisions of the declaration of trust, there is ample authority to support the proposition that the validity of the trust is to be determined by the law of the domicile of the settlor, if the property consists of personalty. Thus testamentary trusts created by foreign testators have been upheld in the highest courts of New York in cases where the duration of the trust violated the New York rule against suspension of absolute ownership; the trust being valid under the laws of the state of testator's domicile. Cross v. U. S. Trust Co., 131 N. Y. 330, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep. 597; Dammert v. Osborn, 140 N. Y. 30, 35 N. E. 407. And the Massachusetts courts have upheld trusts valid under the laws of Massachusetts but void under the laws of New York. Fellows v. Miner, 119 Mass. 541. See, also, Jones v. Habersham, 107 U. S. 174, 2 S. Ct. 336, 27 L. Ed. 401.

In Dammert v. Osborn, supra, the court states:

"The general principle that a disposition of personal property, valid at the domicile of the owner, is valid everywhere, is of universal application. It had its origin in that international comity which was one of the first fruits of civilization, and in this age, when business intercourse and the process of accumulating property take but little notice of boundary lines, the practical wisdom and justice of the rule is more apparent than ever. It would be contrary to the principles of common justice and right upon which the rule is founded, to permit a testamentary disposition of personal property, valid by the law of the domicile, to be annulled or questioned in every other country where jurisdiction was obtained over the property disposed of or the parties claiming it, except for the gravest reasons."

These observations have even more compelling force now than when made thirty-five years ago, and would be equally pertinent to voluntary associations in the form of trusts, organized for profit, whose shares are bought and sold widely on the market.

That the general principle announced by the New York courts in Dammert v. Osborn, supra, would be applied by the courts of that state to trusts created by acts inter vivos is quite apparent from dicta in Cross v. U. S. Trust Co. supra, and Curtis v. Curtis, 185 App. Div. 391, 173 N. Y. S. 103. In the former case, Judge O'Brien states:

"It is a general and universal rule that personal property has no locality. It is subject to the law of the owner's domicile as well in respect to a disposition of it by act inter vivos, as to its transmission by last will and testament, and by succession upon the owner dying intestate. This is, in substance, the language in which Judge Denio stated the law in this court, and which he concisely and clearly extracted from the authorities cited by him. Parsons v. Lyman, 20 N. Y. 112."

Curtis v. Curtis, supra, was a case where one of the settlors resided in New York and the other in New Jersey. The court said:

"There is no question but that, if both settlors resided in Plainfield at the time of the execution of the trust, it would be governed by the law of New Jersey"—citing Cross v. U. S. Trust Co., supra; Dammert v. Osborn, supra.

[3] These cases lead irresistibly to the conclusion that, if the trust created by the investment company in the declaration of trust is valid according to the laws of Massachusetts, it is valid everywhere. There can be no merit in the suggestion that a trust, limited by its terms to a period of years less than 21 years, is void under Massachusetts law as creating a perpetuity or imposing illegal restraint upon alienation. My atten-

tion has been directed to no case, nor have I been able to discover any, where this question has been raised. Whatever light one may gather from text-books of learned writers is opposed to the suggestion. See Gray on Rule against Perpetuities, §§ 223 and 225. If a limitation for a life in being and 21 years and 9 months thereafter does not offend the rule against perpetuities, on what grounds can it possibly be urged that a limitation for a shorter period of 20 years and 8½ months must be declared invalid? I can conceive of none.

[4] There are other reasons why this attack upon the validity of the trust fails, and these reasons obtain whether we apply the laws of New York or the laws of Massachusetts. It has been said that in New York the rule against perpetuities is now a "rule directed against the suspension of absolute ownership or power of alienation," and that unlawful suspension of absolute ownership or power of alienation of personal property exists only when there are no persons in being by whom an absolute unqualified interest in possession can be conveyed. The mere creation of a trust does not ipso facto suspend the power of sale. Hammerstein v. Equitable Trust Co., 156 App. Div. 644, 141 N. Y. S. 1065; Stoiber v. Stoiber, 40 App. Div. 156, 160, 57 N. Y. S. 916; Ullman v. Cameron, 92 App. Div. 91, 87 N. Y. S. 148; In re Allen's Will, 111 Misc. Rep. 93, 181 N. Y. S. 398.

In addition to the power which resided in the settlor to sell at any time the underlying securities for the purpose of reinvestment, there were provisions, in the trust under consideration, by which a holder or holders of 1,000 collateral trustee shares could, at any time during the life of the trust, surrender his, or their, certificate or certificates representing the shares and receive a unit of underlying securities in exchange therefor. These provisions bring the case within the principle enunciated in Hammerstein v. Equitable Trust Co., supra, inasmuch as at all times it was possible for the holders of the beneficial interest to terminate the trust as to that portion of the trust res represented by their shares and thereby acquire the absolute ownership and power of alienation over the same. The result would be the same whether the trust was terminated by the acts of one party or by the joint act of several parties. Stoiber v. Stoiber, supra; Williams v. Montgomery, 148 N. Y. 519, 43 N. E. 57.

These general propositions have received support in other jurisdictions. Groub v. Blish (Ind. App.) 152 N. E. 609; Baker v. Stern (Wis.) 216 N. W. 147.

In Massachusetts Howe v. Morse (174 Mass. 491, 55 N. E. 213) dealt with an unincorporated association in the form of a trust, by the terms of which the trustees held real estate which it could convey only upon authority of the directors of the association. By the terms of the trust, it could be terminated at any time after five years. There was no limited period within which the trust must be terminated. It was objected that the trust was void as creating a perpetuity and illegally restraining alienation of the property. The court, however, was of the opinion that the absolute right to alienate the shares of beneficial interest which the shareholders enjoyed, together with the right of the directors to authorize the sale from time to time of the trust property, free from any trust, and the further right of three-fourths of the shareholders to terminate the trust, were sufficient to take the trust outside of the rule against perpetuities, the court expressly finding that the trust set forth in the declaration of trust was not void as creating a perpetuity or imposing illegal restraint upon alienation.

In the case at bar, the right of the shareholders at any time to terminate the trust and to acquire the absolute ownership, together with the right in the investment company to terminate the trust at any time, would be sufficient to prevent a perpetuity or an illegal restraint upon alienation within the doctrine of Howe v. Morse, supra.

[5] It is further intimated that the holders of the collateral trustee shares acquired no interest in the trust property because, in theory at least, the investment company was the first beneficiary, and that section 15 of the Personal Property Law prohibited the alienation of the beneficiaries' interest. The pertinent provisions of section 15 are as follows:

"The right of the beneficiary to enforce the performance of a trust to receive the income of personal property, and to apply it to the use of any person, cannot be transferred by assignment or otherwise. But the right and interest of the beneficiary of any other trust in personal property may be transferred."

I see nothing in this suggestion that needs to disturb the plaintiff. I have no hesitation in agreeing with the plaintiff's counsel that the statute does not apply to the trust now before the court, and this for two reasons: First, the trust was created for the benefit of the settlor (Newton v. Hunt, 134 App. Div. 325, 119 N. Y. S. 3); and, second, because the holders of beneficial interest have an interest in the trust fund as well as

the right to income. The courts of New York have narrowly construed this section to cover only cases where the life tenant is entitled to the income and has no further interest in the trust funds. Hammerstein v. Equitable Trust Co., supra. Wells v. Squires, 117 App. Div. 502, 102 N. Y. S. 597.

These considerations are all based upon the assumption that the laws of New York apply. For reasons already stated, I am firmly of the opinion that this New York statute would not apply. The laws of Massachusetts contain no similar limitation upon the alienability of a beneficiary's equitable interest.

The incalculable loss to investors which would ensue if the holders of shares in the trust were to be deprived of the security of the trust assets would not justify a court in declaring the trust void, or in impairing the rights of the shareholders, unless it were driven to do so by indubitable and firmly established propositions of law. No such justification has been shown to exist in the present case. I am convinced that the trust is valid and that the plaintiff holds the trust res for the benefit of the holders of collateral trustee shares upon the terms, conditions, and stipulations of the written declaration of trust. I am equally convinced that the investment company, except as holder of collateral trustee shares and except as to rights in unissued shares, has no right, title, or interest, legal or equitable, in the trust fund which would pass to its trustee in bankruptcy in the event it should be adjudicated. I have been able to discern no reason why the plaintiff would be warranted in failing, or refusing, to fulfill all of its duties and obligations to the holders of collateral trustee shares, which it assumed by accepting the trust. Furthermore, I see no impediment, by reason of the receivership, which should prevent the investment company from furnishing the plaintiff with duly signed certificates, to be used in transferring shares, or in performing such acts of supervision or management, conformable to the terms of the trust, as may be necessary to conserve the interests of the shareholders.

For reasons stated therein, I filed an earlier memorandum which this opinion supplements. It reads as follows:

25 F.(2d)—32

"In view of the possibility that emergencies may arise, resulting in serious consequences if the plaintiff is kept in doubt as to its rights and duties in the premises, I have deemed it wise to file this preliminary memorandum, to be followed by a more elaborate opinion later.

"I find and rule as follows:

"(1) That the trust created by the declaration of trust, dated April 16, 1927, is a valid trust and that the securities deposited pursuant to the terms of the trust indenture constitute trust property, to be held by the plaintiff for the benefit of the lawful holders of the shares representing the beneficial interest therein, and referred to as the 'collateral trustee shares.'

"(2) That to the extent that such trust res is represented by collateral trustee shares, outstanding in the hands of persons, firms, or corporations other than the New England Investors Shares, Inc., the said New England Investors Shares, Inc., has no right, title, or interest in said trust res which would pass to a trustee in bankruptcy if it should later be adjudicated bankrupt.

"(3) That it is the right and duty of the plaintiff to transfer collateral trustee shares, now or hereafter duly presented for transfer in accordance with the provisions of the declaration of trust.

"(4) That it is the right and the duty of the plaintiff to deliver underlying securities and accrued dividends thereon to holders of collateral trustee shares who are entitled to receive the same by virtue of the provisions of the declaration of trust.

"(5) That it is the duty of the New England Investors Shares, Inc., to furnish the plaintiff with duly signed certificates for use in completing transfers of shares of other holders of collateral trustee shares.

"(6) That the New England Investors Shares, Inc., may exercise its right to change investments in accordance with the provisions of said declaration of trust."

On the memorandum an interlocutory decree has been entered. Counsel have now presented a decree based upon the prayers of plaintiff's bill of complaint, and consistent with this opinion and the previous memorandum, which decree may be entered as a final decree.