HENRY S. HOWE & another, trustees, *vs.* CHARLES W. MORSE & others.

Suffolk.     December 7, 8, 1898. — November 20, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Unincorporated Association — Declaration of Trust — Perpetuity — Restraint upon Alienation.*

A trust for the convenience of an unincorporated association in renting and selling land, under which the land is held for no other purpose, and where the income is not accumulated but is distributed as it accrues, and where the land is to be sold free of trusts at the will of the association, and where the whole equitable interest in the trust is at every moment vested absolutely in those who at that moment are shareholders, and never can become vested in any other persons save by act of the absolute owners or by operation of law upon their property, and not by force of any limitation contained in the deed of trust, the equitable interests so vested being also constantly vendible by their several owners without let or hindrance, as well as subject to their debts and passing like other property upon death by virtue not of the deed of trust but of the general laws governing the disposition of the property of decedents, withdraws no property from commerce, and is not void either under the rule against perpetuities or as creating an illegal restraint upon alienation.

BILL IN EQUITY, filed October 4, 1897, against Charles W. Morse, Lola C. Sprague, and Martin Taylor, praying for the liquidation of the affairs of the Daggett Building Association, for an account, for a receiver, and for an injunction. Lola C. Sprague alone defended.

At the hearing before *Holmes*, J., the first four paragraphs of the bill were not controverted, and the judge found them to be true. The allegations were that James H. Carleton, who died in March, 1893, and under whose will the plaintiffs were trustees, was the owner of one hundred shares in the capital stock of the Daggett Building Association, Charles W. Morse and Lola C. Sprague holding respectively thirty and one hundred and twenty shares, being the balance thereof; that Carleton's shares had passed to the plaintiffs as trustees; that the association was not a corporation, but was organized under the by-laws set forth in the declaration of trust; that its property consisted of certain lands, with the buildings thereon, situated in Haverhill, a description of which was given, which property had long yielded a regular income in the form of rents, and that the declaration of trust executed by Lola C. Sprague, Martin Taylor, and Charles W. Morse on June 21, 1890, and duly recorded on June 26, was as follows:

" Whereas an association has been formed known as the Daggett Building Association with a capital stock of twenty-five thousand dollars ($25,000), divided into 250 shares of one hundred dollars each, and Whereas said association has adopted by-laws setting forth and defining the rights, powers, duties and obligations of the stockholders officers and agents of the association, which by-laws are as follows: By-laws of the Daggett Building Association. The officers of this association shall consist of a president, clerk, treasurer, and a board of not less than three directors. The clerk, treasurer, and directors shall be chosen by ballot by the stockholders at the annual meeting, and shall hold office for one year or until their successors shall be elected. The president shall be elected by the directors as soon after the annual meeting as may be, and shall hold his office for one year or until his successor is elected. He shall be chosen from the board of directors. The president shall be chairman of the directors and shall preside at all meetings of the stockholders and of the directors, when present, and shall perform such other duties, as usually appertain to his office. He shall sign all certificates of stock and be the custodian of the treasurer's bond. The clerk shall keep full true and accurate records of all business done and votes passed at the meet-

ings of the stockholders and directors. He shall give notice of all meetings of the stockholders and directors in the manner prescribed by these by-laws. The treasurer shall have the custody and care of all the cash, funds, securities, books of accounts, seals and all papers belonging to the association. He shall keep or cause to be kept acurate and true accounts of all the business of the association and transfers of stock. And said books shall be opened to the inspection of the stockholders. He shall sign all certificates of stock and affix the association's seal thereto. He shall make a written report at each annual meeting and at such other times as the directors may require, of the assets and liabilities of the association, showing its financial conditions. ·He shall deposit its available funds to its credit in such banks as the directors may designate. He shall give. such bond to the faithful discharge of his duty as the directors may require. The directors shall have the general charge and management of all the property held in trust for the association with full power in the name of the trustees for the association to let, or cause to be demised and leased any and all of said property for any term not exceeding five years, which they may deem judicious ; and with full power in the name of said trustees and for the benefit of said association to collect and receive any and all rents, income or other moneys which may become due or accrue on account of said trust property, or any part thereof, by reason of renting, managing, holding or owning said property ; or by reason of any action of any person, board or corporation in taking, trespassing on or interfering therewith ; and with full power in their own names and upon their own credit and responsibility, but for the benefit of said association, to make any and all repairs, or improvements upon or changes in said property or any part thereof, which they may deem advisable, to keep or put the same in good condition or to facilitate renting the same or make the same more convenient or suitable for occupation ; and for said purposes they shall have full power upon their own credit and responsibility to make any and all arrangements which they may deem judicious for supplying said property or any part thereof or any of the tenants thereof with heat, or light or power or water, or other conveniences ; and with full power and authority upon their own credit and responsibility to operate

elevators in any of said property and to do any other thing in connection therewith which may seem to them calculated to facilitate renting said property or any part thereof, or to protect it from any depreciation or loss by fire or otherwise: and with full power and authority to compromise and settle as they deem proper any controversy or claim which may arise from the execution of any of the aforesaid powers; or from any injury which any person or corporation may claim to have sustained by reason of any negligence or act on the part of said directors in executing said powers or managing the affairs of said association. And said directors shall have full power to pay and to cause to be paid from the moneys which they shall receive and collect for the association aforesaid and from any sales or mortgages of any of said trust property which they shall cause to be made as provided by these by-laws or by the declaration of trust herein adopted, any and all sums of money which they may owe or become liable for by reason of executing any or all of the powers herein given them or which they may become liable for by reason of any injury which any person or corporation may claim to have sustained as aforesaid. The said directors shall have the power and it shall be their duty from the moneys so received and collected by them as aforesaid and from the funds of said association to keep said property insured against loss by fire and to pay any and all taxes and assessments which may be levied on said property or any part thereof, and to perform the conditions of any mortgages on said property or any part thereof, and to prevent said mortgages being foreclosed, and to save the trustees who may hold said property harmless from any and all loss liability and expense by reason of the management by the directors of said property or of the affairs of said association.

"Said directors shall have full power to cause and require the trustees to sell, and convey by quitclaim deed the fee in any and all of said property upon such terms and conditions as said directors may deem judicious provided that at a meeting of the stockholders duly called for such purpose three fourths of the capital stock shall by vote authorize such sale and conveyance to be made and except that no sale shall be made of the property on Merrimac Street in said Haverhill known as the Daggett Block within five years from the first day of July 1890. Said direc-

tors shall have full power and authority to cause and require
said trustees to mortgage any or all of said property by deed
containing usual power of sale but no covenants of warranty,
for the purpose of raising money for the uses and benefit of said
association, provided that at a meeting of the stockholders of
said association duly called for such purpose three fourths of the
entire capital stock shall by vote authorize such mortgages to be
given.   And the said directors shall have full power and author-
ity in the name of said trustees to collect and receive any and
all moneys which may become due by reason of any sales, or
mortgages of said property or any part thereof.   The directors
shall have the power when authorized by unanimous vote of all
the shareholders to purchase from time to time and to pay for
the same out of the moneys of the association other real estate
which shall be conveyed to the trustees for the time being of the
association to be held by said trustees upon the same trusts.
The directors shall have the power to have the possession of any
and all deeds, leases, notes and evidences of title which the
trustees have for the benefit of the association.   The vote or
action of a majority of the directors shall be the vote and action
of the board.   A certificate signed, sealed and acknowledged
by a majority of the directors and recorded in the Essex Regis-
try of Deeds, Southern District declaring and reciting any vote
of the stockholders or of the directors shall be conclusive evi-
dence that such vote was passed, and shall authorize the trustees
to make any conveyance or mortgage or to accept any deed or
take any action which such vote under these by-laws or under
said declaration of trust may require.   The directors shall have
full management of all the property and affairs of the associa-
tion.   They shall have the power to fill any vacancy or vacan-
cies which may occur in the offices of the association, the
person so chosen to serve until the next annual meeting of
the stockholders.   They shall prescribe such rules in regard
to calling their meetings as they shall deem expedient.
There shall be an annual meeting of the stockholders of
this association for the choice of officers and the transaction
of such other business as may be brought before them.   Such
meetings shall be held on the second day of July in such
place in the city of Haverhill as the directors may appoint.

The stockholders shall fix the number of directors for the ensuing year which shall not be less than three. Special meetings of the stockholders may be called at any time by the directors ; and shall be called by them whenever requested in writing by persons holding one third of the stock then outstanding. Notices of all meetings of the stockholders shall be given by the clerk by sending by mail postage prepaid to each stockholder of record directed to him or to her at their last known place of residence a printed notice stating the place, time and purpose of such meeting not less than seven days before the time named. Shareholders holding three fourths of the stock shall constitute a quorum. At all meetings of this association each stockholder shall be entitled either in person or by his duly authorized attorney to one vote for each share held by him or her. At all meetings of the association absent stockholders may vote by proxy authorized in writing, but no proxy shall be valid unless executed and dated within six months previous to the meeting at which it is used. Appointments of attorney to vote at stockholders' meetings must be in writing and delivered to the clerk before voting. Each shareholder shall be entitled to a certificate of stock. Such certificate shall be signed by the president and treasurer and bear the impress of the association's seal, shall state the number of shares to which such stockholder is entitled, shall refer to these by-laws and this declaration of trust, and shall be in substance of the following form that is to say : Daggett Building Association. Capital Stock $25,000. Par value of shares $100. No. —— Shares ——. Not subject to assessment. This certifies that —— is the holder of —— shares of the capital stock of the Daggett Building Association subject to the by-laws of said association and to declaration of trust in favor of that association dated —— and recorded with Essex Registry of Deeds So. Dist. This certificate is transferable only on the books of the said association, in person or by attorney upon the surrender of this certificate. In witness whereof the President and Treasurer of said association have hereunto set their hands and affixed the seal of the association at Haverhill this —— day —— 189—. —— Treasurer. —— President. But all said shares shall be issued subject to the following terms and conditions which shall be printed upon the back of the stock certificates

and shall read as follows, viz. : — The holder of this certificate and his assigns are bound to sell and transfer the within shares of stock to Lola C. Sprague or her assigns at any time on or before the first day of July 1895, upon payment to such holder or his assigns of the par value of such shares and any balance of interest which may be due at the time of such sale and transfer computed at the rate of six per cent per annum on the par value of said shares from the first day of July 1890, with annual rests.    In the meantime the treasurer of said association shall for such holder or his assigns semi-annually on the first day of January and July 1891, 1892, 1893, 1894, 1895 pay to said Sprague or her assigns the excess of dividends declared for the preceding six months on said stock over three per cent of the par value thereof.    Subject to these obligations the holder of this certificate can transfer any or all of these shares.

"All transfers shall be recorded in the books of the association to be kept by the treasurer, and on surrender and cancellation of the certificates held by the transferrer a new certificate or certificates shall be issued to the transferrers as their interests may require subject to the aforesaid terms and conditions.    Any shareholder may at any time sell and transfer his shares or any of them, but each holder of a certificate shall be held by the fact of his acceptance of it to have assented to these by-laws and to the declaration of trust.    In case of loss or accidental destruction of a certificate a new certificate may be issued on such terms as the directors shall see fit.    The shareholders of said association are not to have any interest or title in the trust property itself, and especially they shall have no right to call for any partition, but the share shall be personal property, carrying the rights of division of proceeds and other rights herein elsewhere stated.    The death of a stockholder shall not operate to determine the trust ; nor shall it entitle the legal representatives of the deceased stockholder to an account, or to take any action in the courts against the association or the trustees, but his executors or administrators shall succeed to all rights of said deceased under these by-laws and said declaration of trust. The capital stock of the association shall be $25,000 divided into 250 shares of the par value of one hundred dollars each, and may be increased or decreased from time to time by a three

fourths vote of the stockholders.  Neither the directors nor any
of the officers or agents of the association shall have power to
bind the shareholders personally.  And in every written con-
tract they shall enter into reference shall be made to these
by-laws and to the declaration of trust, and the person or
corporation so contracting with any of the officers or agents
of the association shall look only to the funds and property of
the association for the payment under such contract, or for the
payment of any debt damage judgment or decree, or of any
money that may otherwise become due and payable by reason
of failure on the part of the association or of its officers or agents
to perform such contract in whole or in part, and that neither
the officers or agents of the association nor the stockholders
present or future shall be personally liable therefor.  All the
real estate and mortgages of the association shall be vested in
the trustees to be named by the stockholders and shall be held
by them for the benefit of the association upon the trusts set
forth in these by-laws and in a declaration of trust to be adopted
by the stockholders.  Such trustees may be elected and such
declaration adopted at a meeting of the stockholders duly called
and held in accordance with these by-laws.  In case of the re-
fusal of either one or both of the trustees to act under the trusts
as directed by the directors such trustee or trustees so refusing
may be removed by a three fourths vote of the stockholders at a
meeting duly called and held in accordance with the provisions
of these by-laws.  The directors may from time to time declare
and pay to the stockholders of record such dividends as they
may deem expedient, subject to the rights of said Sprague under
the terms printed on the backs of said stock certificates.  This
association shall have a seal circular in form with the name of
the association and the date 1890 engraved upon it, and so con-
structed that it may be embossed upon paper by pressure.
These by-laws may be altered or amended (except that no
amendments shall be made which shall in the slightest degree
increase the personal liability of the stockholders or trustees)
by a three fourths vote of all the stock of the association then
outstanding at any meeting of the stockholders, when the notice
calling the meeting sets forth the proposed amendment or the
substance of it.  At the meeting of the associates for the pur-

pose of organizing this association they shall be considered stockholders duly authorized to vote on the entire capital stock thereof to the same extent and with the same powers as if certificates of said stock had been duly issued to them. And whereas Lola C. Sprague, Charles W. Morse and Martin Taylor, all of said Haverhill have been chosen by the stockholders to act as the trustees for said association as is provided for in the by-laws of said association ;

" Now therefore, know all men by these presents that we the said Lola C. Sprague, Charles W. Morse and Martin Taylor do hereby for ourselves, our heirs and assigns declare that we hold the parcels of land and buildings thereon, situate in said Haverhill and described in deed from Betsey T. Daggett to John A. Gale, recorded in Essex Registry of Deeds So. Dist. in Book 1222 Leaf 505 to which deed reference is hereby made for a more particular description, and any and all property which may be conveyed at any time hereafter to us as trustees for said association upon the following trusts : That we and our successors in said trust shall permit and allow the directors of said association at their own expense or the expense of said association and upon their own credit and responsibility and in no manner as our agents to manage the said trust property and the affairs and business of said association, to have the possession of the deeds, papers, notes, and evidences of property which may stand in our names as trustees for said association, to receive, collect, hold and pay out in accordance with the by-laws of said association at their expense or the expense of said association the rents and income of said trust property and any and all sums of money which may become due us as trustees of said association by reason of any taking, entering upon or interference with said trust property by any person, board or corporation, as well as any and all sums of money which may become due us in our aforesaid trust capacity by reason of any mortgage, sale conveyance or lease of said trust property, or which may become due us as trustees as aforesaid from any cause whatsoever ; so that the directors of said association shall at all times be permitted and allowed by us and our successors to do any and all things which they may be authorized or required to do by the by-laws of said association or any amendment thereto which

may be adopted as required by said by-laws. And upon the future trust that we the aforesaid trustees and our successors in said trust shall have full power to lease, mortgage or sell and convey in fee simple or otherwise, free and discharged from all trusts all or any part of said trust property at such time or times to such person or persons, upon such terms for such considerations and subject to such restrictions and reservations as the directors of said association shall lawfully require in accordance with the provisions of the by-laws of said association, and the authority of any vote duly certified, acknowledged and recorded as provided by said by-laws; the purchaser named in such deeds or mortgages from us in no instance to be bound to see to the application of the purchase money. And that we and our successors in said trust shall not lease, mortgage, sell, or convey said trust property or any portion thereof excepting as we shall be authorized so to do by the by-laws of said association and the vote of the stockholders or directors required by said by-laws. Provided however if we become indebted or liable for any sums of money by reason of the management of the affairs of the association, or by reason of the failure of the directors to pay or cause to be paid any taxes or assessment laid upon any of said trust property or by reason of the title of said trust property standing in our names, then and in such case we shall have full power and authority to refuse to execute or deliver any lease deed or mortgage of said trust property until such indebtedness or liability shall have been paid or extinguished, and until such payment or extinguishment shall have full power and authority to receive and collect any money, rents or notes due us in our said capacity and apply the same to the payment and extinguishment of such indebtedness or liability. Any trustee under this declaration may resign his trust whenever he wishes so to do, by a declaration in writing to that effect, under seal acknowledged and recorded in the Essex So. Dist. Registry of Deeds, and any trustee may be removed from his office, at any time by vote of all the directors of the association such act and removal to be evidenced by a declaration to that effect, signed by all of the directors, under their seals, acknowledged and recorded as aforesaid. And upon any such resignation or removal, or upon the decease of any trustee under this declaration a suc-

cessor to the trustee so removed, resigning or deceased shall as
soon as possible be chosen by a three fourths vote of the stock-
holders at a meeting duly called and held. And a declaration
of the name of the new trustee signed by a majority of the
directors, under their seals, acknowledged and recorded as
aforesaid, shall be conclusive evidence of the appointment of
such new trustee in the place of the one so removed, resign-
ing or deceased. And therefore the remaining trustee and if
thought expedient the resigning or removed trustee shall exe-
cute, acknowledge and deliver, all such conveyances, (if any),
as may be deemed by counsel expedient or necessary, to vest all
the trust property to the remaining trustees and the new trustee
to be held by them as joint tenants, in fee simple, but upon the
trusts and for the purpose herein set forth. In case however
for any reason it shall be thought expedient by the directors,
they may invoke the aid of the courts in reference to the re-
moval of a trustee or the appointment of a new trustee in the
place of any one removed, resigning, or dying ; but no trustee
appointed by the court shall be obliged to give bonds under the
law for the faithful performance of his trusts, though the direc-
tors may take any security they please from such trustee. This
trust may be terminated at any time after July first 1895 at a
meeting of the stockholders duly called and held, by a three
fourths vote of all the stock of the association then outstanding.
A certificate of that fact signed by two of the directors for the
time being, under their seals and acknowledged and recorded in
the Essex So. Dist. Registry of Deeds, shall be conclusive evi-
dence of such termination of the trust and thereupon all proper
proceedings may be had for a final sale of the property and a
division of the proceeds."

The judge further found that the association was legally
organized, and at the first meeting officers were duly elected ;
that there had been no election of officers, nor any annual meet-
ing, since the first; that Charles W. Morse was duly elected
treasurer at said meeting, and that, by virtue of the by-laws, he
was still the treasurer of the association ; that Morse had been
away from the Commonwealth nearly all of the time for the pre-
ceding three or four years; that since the organization of the
association, Daniel F. Sprague, the husband of the defendant,

Lola C. Sprague, had collected all the rents of the property of the association, and since the removal of Morse from the Commonwealth had had entire charge of the business and affairs of the association, but without authority from the association and without compensation; that the plaintiffs had not at any time requested a meeting of the stockholders of the association for the purpose of a new election of officers, or for any other purpose; that neither Morse nor Sprague had kept full, accurate, or proper books of account of the affairs of the association, but there had been no fraudulent intention on the part of either of them; and that from such books of account as were exhibited at the trial, and from the evidence of Daniel F. Sprague, who was a witness at the trial, it was impossible to tell whether the plaintiffs had received a proportionate share of the net income of the property of the association.

The judge ruled that the trusts upon which the property was held, as set forth in the declaration, were not void as creating a perpetuity or imposing an illegal restraint upon alienation, as the plaintiffs contended, and that they were not entitled, as of course, to a winding up of the trust and a sale of the property; and being of opinion on the facts that no sufficient cause was shown, refused to direct such winding up or sale, or to appoint a receiver, but found that the plaintiffs were entitled to an account and to receive regular accounts in the future.

The judge reported the case upon these findings and rulings for the consideration of the full court.

The case was argued at the bar in December, 1898, and afterwards was submitted on briefs to all the justices.

J. L. Thorndike, for the plaintiffs.

M. A. Pingree, for Lola C. Sprague.

BARKER, J. While the purpose of the association is to hold, use, and sell land, and the scheme of organization closely follows that of a corporation, and corporations to buy and sell land can be chartered only by special act of the Legislature, this is not a proceeding to restrain or to put an end to the usurpation of corporate franchises. Indeed, as was said in *Phillips* v. *Blatchford*, 137 Mass. 510, "It is too late to contend that partnerships with transferable shares are illegal in this Commonwealth."

Is the trust void as creating a perpetuity, or imposing an illegal

restraint upon alienation?　The right of a shareholder to convey his own shares, or interests, under the trust is in no way restricted, but it is contended that illegality is found in the circumstance that no sale of the corpus of the trust, and no termination of the trust, will necessarily occur within the period of a life or lives in being at the time of the creation of the trust and twenty-one years, and that the provision that the certificate holders shall not have partition of the land, and can compel its sale only by a three fourths vote, works an illegal restraint upon alienation.

The trustees take the legal title to allow the association through its directors to manage the land and to enjoy its rents and income, and to sell the land free of trusts at the will of the association, with a further provision for the termination of the trust by vote of the association at any time after July 1, 1895. Leases for more than five years, and sales, can be made only in accordance with an affirmative vote of three-fourths of the shares, and a like vote is necessary to terminate the trust.　The substance of the situation is that the shareholders for the time being have the whole equitable estate in the corpus of the trust, and can at all times sell and transfer their equitable estates at their own pleasure; and the trustees hold the legal title in fee in trust to do with the land whatever may be required by the owners of the equitable estate, which owners have full capacity, at all times and at their own option, to require a sale of the land discharged of the trust, or the immediate termination of the trust after a period of five years and a few days, the owners of the equitable estate being a voluntary association, the beneficial interests in which are represented by shares, and the association acting by vote of the shareholders.　That the directions of the association to the trustees are to be given by three fourths votes, rather than by majority votes, is immaterial, since it cannot be said that one is more improbable than the other: either is a reasonable way of declaring the will of the association, and there is no provision that a vote to sell or to end the trust must be passed within any stated period, or at all.

Such a trust for the convenience of an unincorporated association in renting and selling land, under which the land is held for no other purpose, and where the income is not accumulated but

is distributed as it accrues, and where the land is to be sold free of trusts at the will of the association, and where the whole equitable interest in the trust is at every moment vested absolutely in those who at that moment are shareholders, and never can become vested in any other persons save by act of the absolute owners or by operation of law upon their property, and not by force of any limitation contained in the deed of trust, the equitable interests so vested being also constantly vendible by their several owners without let or hindrance, as well as subject to their debts and passing like other property upon death by virtue not of the deed of trust but of the general laws governing the disposition of the property of decedents, withdraws no property from commerce, and is not within the reason or the terms of what is called the rule against perpetuities. The trust involves no future limitations, no restraint upon alienation, and no accumulation either of income or of principal. The provisions by which the trust fund may be at some time held for the benefit of persons not shareholders at its inception, and who may become such at a period more remote than that allowed by the rule, are not future limitations made by the trust deed in the sense in which the word "limitation" is used in speaking of the operation of the rule. If there shall ever be a shareholder other than those in whom the whole equitable estate was absolutely vested at the inception of the trust, that shareholder will not take his interest by virtue of a limitation in the trust deed, but because of his succession by virtue of the general principles of law to the property of the original shareholder. The new shareholder, with reference to the rule, is in the same situation as a person who, after the expiration of all lives which were in being when a fee or an estate tail was created, and of a further period of twenty-one years, takes the fee by the operation of the law which makes property vendible by or descendible from the owner, and not by virtue of a limitation in the instrument which created the fee. The entire ownership is never for a moment uncertain, nor unvested, and at every moment each owner can freely dispose of his property, and at each moment it can be transferred to his creditor by the ordinary processes of the law, and at each moment the trust can be terminated at the will of the owners of the equitable interest.

The case is not like any of those relied on by the plaintiffs. The statement that " it is impossible to take in succession for ever without a capacity ; and a capacity to take in succession cannot be without incorporation," quoted from the case of *Sutton's Hospital*, 10 Co. 26 *b*, is there made of a corporation administering a public charity, it being contended that the incorporation was void because the foundation was not made before the grant of the letters patent incorporating the hospital, and the statement does not import that perpetual succession cannot exist save in cases of holding by corporations. We see no proper application to the present case of the statement quoted.

*Carne* v. *Long*, 2 De G. F. & J. 75, *In re Dutton*, 4 Ex. D. 54, and *Carrier* v. *Price*, [1891] 3 Ch. 159, were gifts to societies whose members took no personal beneficial interest in the property, which must be kept for the purposes of the society, and could not be disposed of by the members for the time being. These cases, there being no public charity, were simply private trusts, and the gifts were bad because the members of the society for the time being did not have power to alienate the estate. Gray, Perpetuities, § 409, note 2. Marsden, Perpetuities, 300.

It is said that in the case of voluntary societies for whose use land is in effect held in perpetuity, as in the case of the Inns of Court, that whenever the number of the benchers to whom the fee of the land is conveyed as joint tenants is considerably reduced, the survivors cause the land to be conveyed to all the then living benchers. But the benchers are not expected to use these lands for their personal benefit. The plain purpose is to keep the lands forever for the use of the voluntary association as a society charged with certain duties and enjoying certain rights connected in a general way with the administration of the law, and which are inconsistent with any personal interest in or control over the land on the part of the individual benchers. Such cases are therefore like those already examined.

So, too, the present case is clearly distinguishable from *Winsor* v. *Mills*, 157 Mass. 362. The provision in the present trust, that the shareholders are not to have any interest or title in the trust property itself, and no right to call for partition, and that the share shall be personal property, is not a restraint upon alienation, since the alienation of the legal and the equitable owner-

ships are provided for. It does not appear, and cannot be assumed, that the persons who organized the association and became its shareholders had title to the land held by the trustees. Their whole interest comes through the shares which are vendible without restraint. In *Winsor* v. *Mills*, Philbrick, who held the title, owned two undivided thirds of the land, and held the remaining undivided third in trust for Mills, under an explicit agreement that no sale or conveyance of the land, or of any part thereof, or of any interest therein, should be made by Philbrick, his heirs or assigns, except upon the written consent of Mills, his heirs or assigns ; and there was also a provision by which a part of the land might be purchased by Mills or his heirs or assigns at a specified price, at any time before the land should be otherwise sold or disposed of. These were restraints upon alienation, and were held void because they might continue too long. The purpose of the trust was to prevent the alienation of the land, and to keep it out of commerce. Neither of the owners could convey his own share in the property, and the land was intentionally tied up.

We express no opinion upon the contentions that the interests of the shareholders are real estate, and that an agreement not to make partition may be open to objection under the law as to perpetuities and restraints upon alienation. These are matters which upon any theory cannot make the whole trust illegal.

A majority of the court are of opinion that the ruling at the hearing was correct, that the trusts set forth were not void as creating a perpetuity, or imposing an illegal restraint upon alienation, and that the plaintiffs are not entitled to a winding up of the trust and a sale of the property as prayed. They are entitled upon the findings of the report to an account and also to receive regular accounts in the future ; and a decree accordingly should be entered.

*So ordered.*