JULIA FORBRINGER, ET AL., PLAINTIFFS, v. LEONORA ROMANO, ET AL., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided February 27, 1950.

*Messrs. Moser & Griffin (Mr. Bryant W. Griffin* appearing), attorneys for plaintiffs.

*Messrs. Ruback & Albach (Mr. Maxwell M. Albach* appearing), attorneys for defendants Leonora Romano and Pasquale Romano, and Rocco Caruso, individually and as executors of the estate of Antonio Maglio, deceased, and Frank Romano.

*Messrs. McCarter, English & Studer (Mr. Woodruff J. English* appearing), attorneys for defendant, The Overlook Hospital Association.

*Mr. J. Albert Homan,* guardian *ad litem* for infant defendants, attorney *pro se.*

STEIN, J. S. C. This action is brought for the construction of the will of Antonio Maglio, who died December 9, 1948, leaving a last will and testament dated September 11, 1939, in which will he named the defendants Rocco Caruso, Leonora Romano and Pasquale Romano as executors and trustees. The will was probated on July 18, 1949.

Surviving decedent are five children and the aforenamed Rocco Caruso, the widower of a deceased daughter, and fourteen grandchildren, all of whom have been joined in this action for the purpose of declaring their interest, if any, in the estate. The will provides for a gift over of the residuary estate to the Overlook Hospital at Summit, New Jersey, under certain conditions which have not come to pass. The hospital is a party defendant so that its interest, if any, in the estate may be considered.

Complainant also charges that a certain lease made by the executors to one Frank Romano (the son of the two executors Leonora and Pasquale Romano) was improvidently made and prays that the lease be declared invalid. This latter question is not to be herein passed upon since it is agreed that a practical solution will be arrived at between the parties dispensing with the question of the validity of the lease.

The paragraphs of the will which are pertinent, and to which reference will be made, are as follows:

"THIRD: I direct my Executors, hereinafter named, to divide the entire rest, residue and remainder of my Estate, personal estate or mixed, whatsoever same may consist and wheresoever situate, or to which I may be entitled at the time of my death, into six equal parts, each of said parts I give, devise and bequeath unto my Trustees, hereinafter named, to be held by him for the uses and trusts and for the purposes hereinafter set forth.

"FOURTH: I direct that within three months after my death that my Executors and Trustees appoint a board of three appraisers, which appraisers shall appraise any and all real property of which I may die seized and their appraisal shall be absolute and final for the purposes hereinafter designated, and binding upon all my heirs, my heirs at law and upon all the beneficiaries under this Will.

"FIFTH: I hereby give, devise and bequeath unto my Trustees, hereinafter named, all my real estate and I do hereby authorize and empower my said Trustees to dispose of, sell and convey any part of my real estate and I further authorize my Trustees to sub-divide any part of my real estate and to sell same in tracts or lots or by the entire tract.

"SIXTH: I do hereby further authorize my Trustees in their sole discretions to manage my real estate holdings in such a manner as they deem fit and essential.

"SEVENTH: I hereby direct that my Trustees do hereby divide any moneys received from any sale or conveyance of any real estate into six equal parts, each of which part they are to retain control over as Trustees in same manner as in the Fourth paragraph of this Will.

"EIGHTH: I direct that my Trustees do open six Trust accounts in any State Bank by them chosen for the benefit of those hereinafter named and I direct that my Trustees make no disbursement of any of the principal of the Trust Funds for a period of thirty-five (35) years but that the beneficiary of the Trusts are to receive the interest on the Trust Fund each year.

"NINTH: If as a result of economic conditions or otherwise, my real estate does not return a favorable profit, I hereby authorize my Trustees to use moneys in the Trust Funds provided, however, that each Trust Fund be assessed an equal amount. If there are no funds available I then direct my Trustees to call upon the beneficiaries hereinafter named to assist, however, if they, my heirs, fail to assist my Trustees, I then direct that all my real estate be conveyed in fee simple to the Overlook Hospital, Summit, New Jersey.

"TENTH: I further direct that if some of my beneficiaries refuse to assist that upon service of notice upon those refusing beneficiaries to signify their intention to aid in thirty (30) days that upon failure to aid his or her trust be terminated and be divided among the other beneficiaries in equal shares.

\*  \*  \*  \*  \*  \*  \*

"TWELFTH: I hereby direct that my Trustees hereinafter named set up Six Trust Funds one for each of the following:

"(1) Rocco Caruso, my son-in-law, of the City of Newark, County of Essex and State of New Jersey.

"(2) Leonora Romano, my daughter, of the City of Newark, County of Essex and State of New Jersey.

"(3) Concetta Circilo, my daughter, of the Township of Bernardsville, County of Somerset, and State of New Jersey.

"(4) Julia Forbright, my daughter, of the Town of Summit, County of Essex and State of New Jersey.

"(5) Rose Tarantino, my daughter, of the Town of South Orange, County of Essex and State of New Jersey.

"(6) Louise Maglio, my daughter of the Town of Millburn, County of Essex and State of New Jersey.

"THIRTEENTH: I direct that upon the death of any of my beneficiaries that his or her Trust Fund pass to his or her children in equal shares provided however that the Trust be continued as hereinabove stated only with the beneficiaries being changed."

The questions raised for decision are:

(a) Are the trusts declared under the will valid and enforceable? (b) Is the plan of distribution contained in the

will valid? (c) How is the will to be construed? (d) Do the gifts therein made violate the rule against perpetuities?

The answer to these questions will be found in considering the will from its four corners.

"The primary rule of testamentary construction as expressed in countless authorities is that the plain intent of the testator as disclosed by the language of his will, unless contrary to law, must govern. That intention is to be gathered from a reading of the entire will and not from isolated portions thereof. *Supp v. Second National Bank and Trust Co.*, 98 *N. J. Eq.* 242; *Kutschinski v. Sheffer*, 109 *N. J. Eq.* 659; 2 *Schoul., Wills (6th Ed.)* 967, 977. The court must do everything in its power to ascertain the testator's intentions and to see that they are carried out, if possible. *Johnson v. Bowen*, 85 *N. J. Eq.* 76. 'The predominant idea of the testator's mind, if apparent, is heeded as against all doubts and conflicting provisions which might of themselves defeat it.' 2 *Schoul., Wills* 973.

\* \* \* \* \* \* \*

" 'When the question presented requires the construction of a residuary clause, the courts have a strong disposition so to interpret it as to prevent an intestacy with regard to any part of the testator's property. *Leake v. Robinson*, 2 *Mer.* \*386. "It must always be remembered," says Sir Richard Pepper Arden, master of the rolls, in *Philipps v. Chamberlaine*, 4 *Ves.* \*59, "that when the residue is given, every presumption is to be made that the testator did not intend to die intestate." ' " *Second National Bank & Trust Co. of Red Bank v. Borden*, 113 *N. J. Eq.* 378, 167 *A.* 224.

The former Court of Errors and Appeals in the case of *Peer v. Jenkins,* 102 *N. J. Eq.* 235 (1927), dealing with the construction of a will, said (at *p.* 238):

"Courts, in construing a will, may depart from its strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, when such departure is necessary to give effect to what appears, on a full view of the whole will, to have been the intention of the testator. *Marshall's Ex'rs v. Hadley*, 50 *N. J. Eq.* 547."

Here the court will endeavor to find the intention of the testator from the four corners of the document and endeavor so to construe the will as to uphold its validity and avoid intestacy. If it is possible to work out an understandable plan of distribution from the will as an entirety, such plan will be adopted even if it requires some departure from the strict language of the will and the reading of a word or phrase

in a sense different from that ordinarily given to such word or such phrase.

Reading the will having in mind these rules of construction, it becomes apparent what the decedent intended by the provisions contained therein. By the Third paragraph he directs his executors to divide the *"entire"* rest, residue and remainder of his estate, personal or mixed, into six equal parts, and each of said parts he gives to his trustees, to be held in trust for the purposes thereafter mentioned. By the Fifth paragraph he gives to his trustees power of sale. By the Seventh paragraph he directs the trustees to divide the moneys received from such sale into the same six equal parts and directs the investment of such moneys. By the Eighth paragraph he directs that the principal of said moneys shall be held for thirty-five years, the interest to be paid to the beneficiaries of the respective trusts at the end of each year. By the Twelfth paragraph he directs that each of said six trusts, when set up, shall be for a specific beneficiary whom he names. The Thirteenth paragraph provides that if any of the named beneficiaries should depart this life, the specific trust fund set up for him or her shall pass to his or her children and that the children shall continue to take the income until the expiration of the thirty-five-year period, at which time the principal of the trust fund shall pass to such child or children.

And so the plan adopted by the testator constitutes a single complete understandable plan of distribution. The beneficiaries named in the Twelfth paragraph of the will are each, immediately upon the death of the testator, vested with one-sixth of the residuary of the testator's estate, not altered by the fact that the property is conveyed to the trustees, such conveyance being for the purpose of enabling the estate the more easily to be liquidated. As the estate is liquidated the funds arising from such liquidation are by the will automatically divided into the same six portions and must automatically be deposited in separate trust funds, set apart for the six respective beneficiaries. The proceeds of any sale automatically vest separately in the respective beneficiaries. At

no time is title to the residuary estate suspended. The beneficiaries are not entitled to the possession of the principal of the trust funds but merely to the enjoyment thereof until thirty-five years after the death of the testator. If any beneficiary fails to survive such thirty-five-year period, his or her children become entitled under the will to receive the principal at the appointed time, in the meantime enjoying the income from such principal. The Thirteenth paragraph even directs that the name of the beneficiary be changed upon the death of the initial beneficiary.

The plan as herein outlined I find is spelled out by the various paragraphs and provisions of the will. The plan he had in mind may be ineptly stated, but the testator's intention and meaning cannot be doubted. Except for the fact that the ineptness in this case is the product of a scrivener who was a lawyer, the language of Vice-Chancellor Backes in the case of *Traverso v. Traverso,* 99 *N. J. Eq.* 514 (*Ch.* 1926); affirmed, *Traverso v. McMillin,* 101 *N. J. Eq.* 308 (*E. & A.* 1927), is wholly applicable. The Vice-Chancellor, referring to the plan of the decedent's will, in that case said:

"The testator evidently drew his own will, embodying a comprehensive and well-rounded scheme of testamentary disposition, and no doubt felt he had set down his wishes in such plain fashion that there could be no two notions as to its meanings. And were it not for the inept use of technical terms, of which, it seems, he had a conversational familiarity, much confusion would have been spared. The will is evidently the product of a straight-thinking mind of unequivocal purpose, and whatever may be the primary legal import of the variety of expressions used, the testator's meaning is not obscure from the lay viewpoint, nor from the judicial standpoint, if we apply the rules of construction to the development of his intention rather than try to square the will with the rules. The cardinal rule is the real intention of the testator in whatever form it finds expression."

The intention of the testator was that all his property be divided into six parts; that the division be accomplished by the liquidation of assets; that the six parts belong to the six persons named in the Twelfth paragraph of the will and that for each such person a separate and earmarked trust fund be set up in a state bank; that the interest earned by each

trust fund be paid to each beneficiary annually; and that the principal of such fund be paid to the specific beneficiary at the end of thirty-five years, and that if in the interim the beneficiary dies, the funds should belong to the children of the beneficiary forthwith and be paid over to them when the thirty-five-year period expires, the interest of the fund to be paid annually in the interim to such issue. He intended that the estate vest in the six named beneficiaries, in six equal parts, forthwith upon his death, and remain vested for the thirty-five-year period, the possession and enjoyment being postponed for the thirty-five years, but that the fruits thereof be enjoyed by the named beneficiaries in the interim.

The plaintiffs contend that the trusts set up by the testator are invalid in that the persons who will be entitled to distribution cannot be ascertained until the expiration of thirty-five years, which is a period not measured by the term of any life or lives in being, and therefore violate the rule against perpetuities. This contention is predicated on the provisions of the Eighth paragraph of the will, which directs the trustees to make no disbursement of principal out of the respective trust funds for thirty-five years but provides for distribution of interest annually.

If the scheme for the distribution of the testator's estate were of such character as to postpone the vesting of the *corpus* for a period of thirty-five years, or for any other period in excess of twenty-one years, without tying such vesting to life or lives in being, the bequest would violate the rule against perpetuities. But the rule does not deal with the question of the possession or enjoyment of property. As was said by Chancellor Magie in *Lembeck v. Lembeck, 73 N. J. Eq.* 427; affirmed in 74 *N. J. Eq.* 848 (see 73 *N. J. Eq.,* at *p.* 428):

"The rule against perpetuities is a rule against postponing the vesting of estates for a period extending beyond lives in being and twenty-one years after. 22 *Am. & Eng. Encycl. L.* 703. The rule is directed solely against the unlawful postponement of the vesting of estates, and is not applicable to their possession or enjoyment. 22 *Am. & Eng. Encycl. L.* 722; *Redf., Wills* 846; *Brandenburg v. Thorndike,* 139 *Mass.* 102; *Seaver v. Fitzgerald,* 141 *Mass.* 401; *Howe v. Morse,* 174 *Mass.* 491."

In the cited case the testator, among other things, provided that certain shares of stock which he owned be held by his executors and the dividends thereof divided among the persons and in the manner and proportion mentioned in the residuary clause, and provided that the executors might sell the same when they deemed it advisable but need not sell the stock for a period of twenty-five years after the testator's death. He further directed that when the stock was sold or at the expiration of twenty-five years from his death, the stock or the proceeds of the sale thereof should become part of the residuary and be distributable therewith. In passing upon the question as to the applicability of the rule against perpetuities to the provision relating to the said shares of stock, the Chancellor said:

"* * * As this stock passes by the residuary devise and bequest, it is now vested in those to whom the residuary estate goes, and the retention of it by the executors as trustees, under the discretion permitted to them, for a period not exceeding twenty-five years, is a mere postponement of the possession and does not affect the vesting of the interest in that stock. * * *"

In *Trippe v. National Newark & Essex, etc., Banking Co.,* 98 *N. J. Eq.* 462; affirmed, 100 *N. J. Eq.* 356, William R. Trippe died and by his will he gave to the National Newark and Essex Banking Company $100,000 in trust, to pay the income to his three children in equal shares, their children to take if any should die before the termination of the trust. The residue of his estate he gave to his executors substantially upon the same trust and provided that the income from the estate was to be given to his three children in equal shares and at their death to their issue until the issue arrived at the age of 25, when they were to take the principal. In determining that the rule against perpetuities did not apply to this residuary provision, Vice-Chancellor Backes held:

"* * * By its provisions the lawful issue of the testator's children are, on the death of their parent, to *receive and take* their parent's one-third share of the trust funds. The gift of principal vests immediately upon the death of the parent, the enjoyment of the income being postponed until the issue severally reach twenty-one, and of the principal until they reach twenty-five, with possible beneficial use of the income until twenty-one. If an estate vests within

the prescribed period, the postponement of the time of enjoyment beyond lives in being and one and twenty years thereafter does not contravene the rule against perpetuities. *Dusenberry v. Johnson,* 59 *N. J. Eq.* 336; *Lembeck v. Lembeck.* 73 *N. J. Eq.* 427; *In re Smisson,* 79 *N. J. Eq.* 233; *Canda v. Canda,* 92 *N. J. Eq.* 423. If the time of payment offends the rule against restraint upon enjoyment the restriction is void, not the gift. *Gray Perp.* (3d *Ed.*) 100, 503; *Foulkes Perp.* 292; *Lembeck v. Lembeck, supra.*

By the Third paragraph of the will the testator directs the executors to "divide the entire rest, residue and remainder" of his estate, personal and mixed into six separate units and then devises and bequeathes the same unto the trustees, to be held for the uses and trusts and the purposes thereafter mentioned, the said uses and trusts being contained in the Twelfth and Thirteenth paragraphs of the Will. By the latter he directs six separate trust funds for six named individuals and for the respective issue of such individuals. No further citation of authority is needed to establish that this constitutes an immediate vesting of so much of the estate as consists of personal or mixed property.

By the Fifth paragraph of his will the testator devises his real property to his trustees and gives them the power of sale. The moneys received from any such sale is by the Seventh paragraph directed to be divided into six equal parts. By the Eighth paragraph he directs his trustees to deposit the same moneys in the six trust accounts for the six beneficiaries named in the Twelfth paragraph of the will. Each of said trust funds is as to principal to be continued for a period of thirty-five years, but the interest therefrom is to be paid annually to each of the beneficiaries. Thus we find a complete vesting of the real property immediately upon the death of the testator. The cases in our State establish that where the interest of the legacy is directed to be paid to the legatee until he receives the principal, or where the legacy is placed in the hands of trustees for the exclusive benefit of the legatee until it is directed to be paid over, the legacy will be deemed vested. See *Fidelity Union Trust Co. v. Rowland,* 99 *N. J. Eq.* 72; *Berrien v. Berrien,* 4 *N. J. Eq.* 37; *Bonnell's Ex'rs v. Bonnell,* 47 *N. J. Eq.* 540.

Judgment in accordance with the foregoing conclusions.